IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 98-51089

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES O. KALLESTAD,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before REYNALDO G. GARZA, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this 28 U.S.C. § 2255 case we consider a challenge to the constitutionality of 18 U.S.C. § 2252(a)(4)(B), which prohibits the possession of sexually explicit depictions of minors if those depictions or the materials used to produce them were shipped in interstate commerce.[1]  We are persuaded that Congress could

---

[1] At the time of Kallestad's charged conduct, 18 U.S.C. § 2252(a)(4)(B) provided criminal penalties for any person who

(B) knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if –

(i) the producing of such visual depiction

rationally conclude that to regulate a national market in child pornography it was necessary to regulate its local possession.

I

Government agents found a large number of nude photos and films of women, some of whom appeared to be minors, in Kallestad's home. They also found notes he made regarding the women, including their names, addresses, and phone numbers. Agents used these notes to locate some of the women, and they discovered that several of them were minors at the time the photos and films were taken.

Kallestad had advertised in the Austin American Statesman newspaper for "slender female nude models." Some of the advertisements stated that the age of the "models" was "unimportant." Several of the girls who responded to the advertisement were 16 to 17 years old, and most of them told

involves the use of a minor engaging in sexually explicit conduct; and

(ii) such visual depiction is of such conduct.

18 U.S.C. § 2252(a)(4)(B) (1991). Section 2252(a)(4) was amended on October 30, 1998. *See* Protection of Children From Sexual Predators Act of 1998, Pub. L. No. 105-314, Title II, §§ 202(a), 203(a), 112 Stat. 2977, 2977-78. The amended statute makes it an offense to possess one or more (rather than three or more) sexually explicit depictions of a minor. *See* 18 U.S.C.A. § 2252(a)(4)(B) (2000). The amendments also provide for an affirmative defense when three or fewer matters are possessed and the defendant either promptly destroyed them or contacted law enforcement authorities. *See* 18 U.S.C.A. § 2252(c) (2000). Kallestad's conduct was completed by October 31, 1991, the date on which officers discovered the photographs. Since Kallestad's conduct occurred before the statute was amended, the government was required to prove that he had three or more or sexually explicit depictions of a minor.

2

Kallestad their ages and that they were high school students. Kallestad took pictures and made films of the girls engaged in sexually explicit conduct and in some instances of them engaging in such conduct with him. The photos and films were made at Kallestad's home in Austin, Texas. The film used to make the photos and films was manufactured outside of Texas.

Kallestad was convicted of numerous offenses including six counts charging violations of section 2252(a)(4)(B).[2] On direct appeal, we vacated his sentence, finding an error in his sentence.

After Kallestad was resentenced, he moved for relief under 28 U.S.C. § 2255. He argues that his conviction for possession of material involving the sexual exploitation of minors should be vacated because the statute making that conduct an offense exceeds the authority of Congress under the Commerce Clause. Kallestad did not raise this issue on direct appeal.

The magistrate recommended denying relief, and the district court did so, also denying a certificate of appealability. We granted a certificate of appealability on the issue of the constitutionality of the statute prohibiting possession of materials involving the sexual exploitation of minors.

II

The government argues that Kallestad's challenge is barred because he did not raise the question on direct appeal. A section 2255 movant who fails to raise a constitutional or jurisdictional

---

[2] His other offenses included conspiracy to commit bank fraud, bank fraud, aiding and abetting, and making false statements to a federally insured bank.

3

issue on direct appeal waives the issue for a collateral attack on his conviction, unless there is cause for the default and prejudice as a result.[3]  Kallestad argues that his counsel was ineffective for not raising the issue on direct appeal.

It is true that ineffective assistance of counsel can meet the cause and prejudice requirement for overcoming procedural default in a section 2255 motion.[4]  We do not consider the contention further because the government failed to preserve the issue.  The government asserted the procedural bar before the magistrate, but filed no objection to the magistrate's proposed findings and recommendations even though Kallestad filed objections and the district court conducted a *de novo* review of the case.  The government must invoke the procedural bar in the district court to raise it here.[5]  A party who fails to file written objections to a magistrate judge's proposed findings and recommendations waives the objection, and on appeal we will review the issue for plain error only.[6]  The district court did not err in reaching the merits of the constitutional challenge.

III

---

[3] *United States v. Patten*, 40 F.3d 774, 776-77 (5th Cir. 1994) (per curiam);  *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992);  *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981).

[4] *Patten*, 40 F.3d at 776-77; *Pierce*, 959 F.2d at 1301.

[5] *See United States v. Drobny*, 955 F.2d 990, 995 (5th Cir. 1992).

[6] *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Kallestad argues that section 2252(a)(4)(B), which prohibits mere possession of child pornography, is beyond Congress's power under the Commerce Clause. We review this constitutional challenge to a federal statute *de novo*.[7]

Similar arguments have been made in, and rejected by, other courts. The Third Circuit, in *United States v. Rodia*,[8] rejected a similar challenge by a defendant convicted of possessing child pornography. The court noted that, in passing the 1978 Protection of Children Against Sexual Exploitation Act, Congress explicitly found that child pornography was a "multi-million dollar industry," and the court concluded that there was a "substantial interstate market" in child pornography.[9] The *Rodia* court then analogized to *Wickard v. Filburn*,[10] and upheld the statute.[11] Other courts have upheld section 2252(a)(4)(B) based on its jurisdictional hook, which requires that either the pornography itself, or the material used to manufacture it, has moved in interstate commerce.[12]

In *United States v. Lopez*,[13] the Supreme Court defined three

---

[7] *See United States v. Jennings*, 195 F.3d 795, 800 (5th Cir. 1999).

[8] 194 F.3d 465, 477-79 (3d Cir. 1999).

[9] *Id.* at 474.

[10] 317 U.S. 111 (1942).

[11] *See Rodia*, 194 F.3d at 476; *see also United States v. Robinson*, 137 F.3d 652, 655-56 (1st Cir. 1998).

[12] *See United States v. Bausch*, 140 F.3d 739, 740-42 (8th Cir. 1998); *Robinson*, 137 F.3d at 654-55.

[13] 514 U.S. 549 (1995).

categories of activity Congress may regulate under the Commerce Clause: channels of interstate commerce, persons or things traveling in interstate commerce, and activities having a substantial effect on interstate commerce.[14]  In *United States v. Morrison*,[15] the Court clarified how the third category is to be analyzed.  Courts are directed to inquire (1) whether the statute regulates "commerce," or an activity that might be deemed an "economic activity," broadly defined; (2) whether the statute has an "express jurisdictional element" that restricts its application to activities that have "an explicit connection with or effect on interstate commerce"; (3) whether congressional findings support the judgment that the activity in question has a substantial effect on interstate commerce; and (4) whether the act made an offense has an attenuated relationship to that substantial effect on interstate commerce.[16]

Kallestad argues that his offense falls within the third category, and like the crime of possessing a gun near a school zone, does not have a sufficiently substantial effect on interstate commerce to fall within Congress's authority.  He challenges section 2252(a)(4)(B) facially and as applied.  We find his challenge unpersuasive.

A

---

[14] *Id.* at 558–59.

[15] 120 S.Ct. 1740 (2000).

[16] *Id.* at 1749–51.

Applying the first *Morrison* factor, the conduct being regulated here is commercial in character, defined broadly. As the 1986 Attorney General's Commission on Pornography found, much of the interstate traffic in child pornography "involves photographs taken by child abusers themselves, and then either kept or informally distributed to other child abusers."[17] Such pornography is exchanged through the mails,[18] and also becomes the basis for commercial child pornography magazines, which are made not with photographs taken by the magazine producers, but rather with homemade photographs submitted by private child abusers.[19] This case is therefore distinct from *Lopez*, as the child pornography statute "represents Congressional regulation of an item bound up with interstate attributes and thus differs in substantial respect from legislation concerning possession of a firearm within a purely local school zone."[20] Moreover, *Wickard* affirms that, when a person produces for their own consumption a product that is traded in an interstate market, his conduct is economic in character. Kallestad may not have intended to sell his photographs, but then Filburn never intended to sell his wheat.[21] In this regard, Kallestad's

---

[17] *Attorney General's Commission on Pornography: Final Report* 406 (U.S. Dep't of Justice, 1986).

[18] *Id.* at 407.

[19] *Id.* at 408.

[20] *United States v. Knutson*, 113 F.3d 27, 30 (5th Cir. 1997), *quoting United States v. Wilks*, 58 F.3d 1518, 1521 (10th Cir. 1995).

[21] *See Wickard*, 317 U.S. at 114. The dissent implies that *Wickard* is no longer tenable in the wake of the Supreme Court's

7

conduct was unlike the rape at issue in *Morrison*.

B

Section 2252(a)(4)(B) also contains a jurisdictional hook.[22] Section 2252(a)(4)(B) makes it an offense to possess child pornography that "has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced by using materials which have been mailed or so shipped or transported."[23] No evidence demonstrated that Kallestad's pictures moved in interstate commerce, but the evidence established that his film did.

This jurisdictional element is not alone sufficient to render section 2252(a)(4)(B) constitutional. That argument, advanced by the government, has no principled limit. Where the relationship between the interstate and local activity is attenuated, a jurisdictional hook alone cannot justify aggregating effects upon

---

decisions in *Lopez* and *Morrison*. Although the Court has noted that *Wickard* resides in the outer boundaries of the Commerce Power, *see United States v. Lopez*, 514 U.S. 549, 560 (1995), it has never overruled the case. The Court has repeatedly underscored its unwillingness to recognize the overruling of its prior decisions by implication. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. . . . [T]he Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.") (internal quotation marks omitted).

[22] This court has said that the lack of such an element was central to the *Lopez* Court's decision to strike down the Gun-Free School Zones Act. *See United States v. Luna*, 165 F.3d 316, 320 (5th Cir. 1999).

[23] 18 U.S.C. § 2252(a)(4)(B).

8

interstate commerce to find Congressional power under the Commerce Clause. It is one thing for Congress to prohibit possession of a weapon that has itself moved in interstate commerce, but it is quite another thing for Congress to prohibit homicides using such weapons.

What the jurisdictional hook does accomplish in this case, however, is to limit prosecutions under section 2252(a)(4)(B) to a smaller universe of provable offenses. It further reflects Congress's sensitivity to the limits upon its commerce power, and Congress's express interest in regulating national markets.

C

Ample findings establish the proposition that local possession of child pornography impacts interstate commerce. In passing the original 1977 Act, Congress found that child pornography was harmful to children, and represented "a large industry – representing millions of dollars in annual revenue – that operates on a nationwide scale and relies heavily on the use of the mails and other instrumentalities of interstate and foreign commerce."[24] Even then Congress did not reach for local possession. That effort, now at issue, came only after the widely reported Meese Commission extensively documented the interstate, commercial nature of child pornography.[25]

These findings show that child pornography is a growing,

---

[24] S. Rep. No. 95-438, 1978 U.S.C.C.A.N. 40, 44.

[25] *See* Part A, *supra*. The Meese Commission also advocated expanding the jurisdictional coverage of the then-existing version of the statute to encompass activities that "affect" commerce. *See Attorney General's Commission on Pornography, supra*, at 475.

predatory business that exploits and injures the most vulnerable among us.  Congress found that the child pornography trade operates across the United States, out of major cities and small towns alike, to reach consumers nationwide.[26]

D

We come, therefore, to the fourth *Morrison* factor – whether or not the act criminalized has only an attenuated relationship to interstate commerce.  As explained in *Morrison*, as well as in our opinion in *United States v. Bird*,[27] and the dissent in *United States v. Hickman*,[28] the question is the rationality of Congress's judgment.  We ask whether Congress could rationally have determined that it must reach local, intrastate conduct in order to effectively regulate a national, interstate market.

It is not sufficient merely for Congress to analogize the local conduct it seeks to regulate to some form of interstate conduct it may permissibly regulate.  Such a license would invite the "house that Jack built" justification for federal authority, unfettered and nigh unprincipled.  Yet the commerce power has internal limits, that are judicially enforceable.  We enforce one such internal limit today by asking if there is a national market in the sense that its discrete and local parts are interdependent and interact.  This inquiry lays aside large classes of local conduct that, while they may present a serious, even "national,"

---

[26] 1978 U.S.C.C.A.N. at 42–48.

[27] 124 F.3d 667 (5th Cir. 1997).

[28] 179 F.3d 230, 232–33 (5th Cir. 1999) (equally divided en banc) (Higginbotham, J., dissenting).

10

problem, do not involve a national market. For example, that the homicide rate is high and presents a national concern does not mean that Congress may federally regulate purely local murder.

Congress determined that an interstate market in child pornography exists. No one questions Congress's authority to regulate that market directly. Unlike the rape at issue in *Morrison*, the possession of child pornography interacts with a national market on both the supply and demand side. Applying the commerce power, read through the Necessary and Proper Clause, Congress can reach purely local possession if it rationally determines that doing so is necessary to effectively regulate the national market.

Congress could reach such a conclusion with respect to child pornography because it may often be impossible to determine whether a specific piece of child pornography has moved in interstate commerce. In some cases, law enforcement officials may be fortunate enough to intercept child pornography en route. Absent that, however, child pornography does not customarily bear a label identifying the state in which it was produced. For that reason, Congress could rationally determine that banning purely local possession was a necessary adjunct to its effort to ban interstate traffic. Congress can rationally decide that failing to reach to the fountainheads will impede its regulation of the interstate stream.

This is the rationale supporting the federal laws prohibiting

11

possession of certain controlled substances[29] and firearms.[30]  We explained its limits upon the commerce power in a dissenting opinion in *United States v. Hickman*,[31] and earlier in *United States v. Bird*.[32]  As we observed in *Bird*:

> [O]ur inquiry must determine not simply whether section

---

[29] *See United States v. Lopez*, 459 F.2d 949, 951 (5th Cir. 1972) (upholding federal drug laws, stating "where it is apparent that an attempt to separate interstate activities from intrastate activities would be a futile exercise substantially interfering with and obstructing the exercise of the granted power of Congress to regulate interstate commerce, that attempt is not required").  Although this case was decided before the Supreme Court's 1995 *Lopez* decision, courts addressing Commerce Clause challenges to 18 U.S.C. § 841 since that decision have found it constitutional.  *See United States v. Edwards*, 98 F.3d 1364, 1369 (D.C. Cir. 1996); *United States v. Kim*, 94 F.3d 1247, 1249-50 (9th Cir. 1996); *United States v. Bell*, 90 F.3d 318, 321 (8th Cir. 1996); *United States v. Lerebours*, 87 F.3d 582, 584-85 (1st Cir. 1996).

[30] The Supreme Court in *Lopez* refused to decide the broader question of whether Congress could forbid the "mere possession" of firearms.  *See Lopez*, 404 U.S. at 339 n.4.  Since the Supreme Court's *Lopez* decision, this Court has held that Congress could forbid the possession of a firearm by a person subject to a protective order prohibiting domestic violence.  *See United States v. Pierson*, 139 F.3d 501 (5th Cir. 1998); 18 U.S.C. § 922(g)(8).  In *Pierson*, this Court found the presence of a jurisdictional hook a dispositive basis for distinguishing the Supreme Court's *Lopez* decision.  *See Pierson*, 139 F.3d at 503.  *See also United States v. Knutson*, 113 F.3d 27 (5th Cir. 1997) (upholding 18 U.S.C. § 922(o), which criminalizes possession of a machine gun, against a Commerce Clause challenge); *United States v. Kirk*, 105 F.3d 997, 999-1005 (5th Cir. 1997) (en banc) (opinion of Higginbotham, J.) (same).  The dissent's arguments in this case contradict the clear import of this Court's decisions in the drug and firearms contexts. The logic underlying the dissent would require a reversal of these decisions, thereby overturning a vital and established body of federal protections against criminal conduct.

[31] 179 F.3d at 232-33.

[32] 124 F.3d at 667.

248(a)(1) proscribes intrastate activity that has (or might have) a substantial affect on interstate commerce, but rather whether there is a national commercial market in abortion-related services such that the regulated conduct – considered in light of the size and scope of the benchmark market – substantially affects interstate commerce.[33]

*Bird* holds, as we again insist today, that in the absence of a jurisdictional hook itself sufficient to sustain its regulation, Congress must have as its purpose the regulation of a national market and a rational basis for concluding that permitting the proscribed conduct would impair Congress's ability to regulate that market.

A true market is inevitably commercial, and is pushed by supply and demand, whether manifested in swaps or purchase and sale. The Congress, supported by the findings of the Meese Commission, found such a market in child pornography. With such a market we have little hesitation in concluding that where the product is fungible, such that it is difficult if not impossible to trace, Congress can prohibit local possession in an effort to regulate product supply and demand and thereby halt interstate trade.

IV

In sum, acting pursuant to its commerce power, Congress may reach intrastate possession in an effort it may rationally conclude is necessary to control this interstate market. It is not irrational for Congress to conclude that to regulate a national commercial market for a fungible good, it must as a practical

---

[33] *Id.* at 677.

matter be able to regulate the possession of that type of good – possession that in a real economic sense is never wholly "local." Local inventories become the source of trading and selling as familiarity dulls the utility of the pictures.

Congress could reach Filburn's wheat because the federal government legitimately sought to support the price of wheat on the interstate market. Congress had little concern for the few bushels of wheat in *Wickard* grown for home consumption. Its intent was plainly to regulate the national market. That its goal was to support wheat prices is of no moment. Its means, by necessity, was control of supply. Our analysis would not differ if Congress's regulatory objective had been to end all production of wheat. For like reasons, Congress can reach Kallestad's pornography because it legitimately seeks to eliminate the interstate market for child pornography. And it is rational to conclude that reaching local possession is a necessary incident to that objective.

V

We hold that section 2252(a)(4)(B) is facially valid and that its application to Kallestad in this case falls within Congress's power under the Commerce Clause.

AFFIRMED.

14

E. GRADY JOLLY, Circuit Judge, dissenting:

I respectfully dissent. For whatever else it may be cited, United States v. Lopez at least stands for the proposition that purely intrastate, non-commercial possession of a non-fungible good "is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." 514 U.S. 549, 567, 115 S.Ct. 1624 (1995). In the light of this understanding, 18 U.S.C. § 2252(a)(4) cannot constitutionally be applied to this defendant's conduct--the simple local possession of self-generated child pornography in which there is no suggestion of commercial activity.

The Supreme Court recently reiterated in United States v. Morrison that "Lopez's review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." 529 U.S. 598, 120 S.Ct. 1740, 1750 (2000). Like here, the activity in question there was no "economic endeavor." The challenged statute in Morrison was the Violence Against Women Act, which criminalized even intrastate, local acts of violence. The Court struck down the statute, stating that "[w]e accordingly reject the argument that Congress may regulate non-economic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.

The Constitution requires a distinction between what is truly national and what is truly local." Id. at 1754.

Today, the majority has embraced logic the Morrison Court eschewed. The majority holds that Congress can indeed regulate non-economic, intrastate criminal conduct (possession of child pornography), simply because "this reach into local intrastate conduct was a necessary incident of a congressional effort to regulate a national market." It so holds, despite the Morrison Court's observation that "thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." Id. at 1751.

The majority never asserts that simple possession of self-generated child pornography is an economic activity. Indeed, simple possession for personal purposes cannot possibly be so classified. Instead, the majority's opinion relies on the fall-back principle of Wickard v. Filburn to establish that Congress can reach even non-economic intrastate activity. See 317 U.S. 111, 63 S.Ct. 82 (1942). The majority undertakes such an application of Wickard, even though Morrison explicitly reminds us that "in every case where we have sustained federal regulation under Wickard's aggregation principle, the regulated activity was of an apparent commercial character." Morrison, 120 S.Ct. at 1750, n.4. Because I can think of no activity less commercial than the simple local

possession of a good produced for personal use only, I believe that section 2252(a)(4) is unconstitutional as applied to Kallestad's conduct.

Neither does the majority persuade me that the requisite connection to interstate commerce exists in this case because outlawing local possession of visual depictions curbs interstate demand for those pictures, thus, according to the majority, discouraging individuals from entering the interstate market for child pornography. The majority relies in substantial part on Wickard for this conclusion. However, the persuasiveness of Wickard[34] in the wake of Lopez and Morrison is questionable in the analysis of the criminal statute we consider today.[35] Moreover, the facts before this court are distinguishable from those in Wickard. The Lopez Court noted that Wickard "involved economic activity in

---

[34]We surely do not suggest that Wickard has been overruled by the Supreme Court since only the Supreme Court can overrule its own decisions. It cannot be denied, however, that some cases reach a zenith before fading, sometimes to be reignited at a later date.

[35]The Lopez Court noted that while the "broad language" in Wickard, which the court called "the most far reaching example of Commerce Clause authority over intrastate activity," may have "suggested the possibility of additional expansion, . . . we decline here to proceed any further." 514 U.S. at 560, 567. Rather than expressly reaffirming the decision in Wickard, Lopez reconsidered that and other prior decisions to conclude that the regulation of noncommercial intrastate conduct must be "an essential part of a larger regulation of economic activity, in which the regulatory scheme would be undercut unless the intrastate activity were regulated." Id. at 561.

a way that the possession of a gun in a school zone does not." Id. at 560. In the same way, simple possession of child pornography does not interact with interstate commerce like the possession and consumption of wheat did in Wickard. In Wickard, the act of possessing and consuming wheat directly affected the price of wheat on the national market, and it was Congress' interest in regulating the price on that market that constitutionally justified the regulation of private wheat consumption:

> It can hardly be denied that a factor of such volume and variability as home-consumed wheat would have a substantial influence on price and market conditions. This may arise because being in marketable condition such wheat overhangs the market and, if induced by rising prices, tends to flow into the market and check price increases. . . . Home-grown wheat in this sense competes with wheat in commerce.

317 U.S. 111, 128.

Congress' authority to regulate intrastate possession and consumption of wheat in Wickard derived only from the direct economic interaction between consumption of home-grown wheat and the market price of wheat. However, the local possession of self-generated child pornography does not have such a direct and substantial affect on an interstate market.[36] In the facts before

[36]The majority asserts that Wickard stands for the principle that "when a person produces for their own consumption a product that is traded in an interstate market," Congress can regulate local possession of that product. This expansive interpretation of Congress' commerce power has no limit. An interstate market exists for virtually any product one might possess. Under this

us, Kallestad's non-commercial, local possession of child pornography, where no interstate transportation or commercial transacting occurred, had at most an insubstantial affect on the interstate market for child pornography.

Nevertheless, the majority attempts to connect simple possession of pornography with interstate commerce by asserting that such possession is "never wholly local" because "[l]ocal inventories become the source of trading and selling as familiarity dulls the utility of the pictures."  I do not think the majority can so blithely assume this critical connection to interstate commerce that provides the essential authority for Congress' regulation of intrastate conduct, especially when the evidence shows that no such connection existed in the facts of this case. Indeed, the evidence shows that Kallestad did not purchase, trade, sell, or barter the pornography he possessed.  Nor does the evidence show that he had any intention to ever do so.  Whatever weight <u>Wickard</u> should be given after <u>Lopez</u> and <u>Morrison</u>, it cannot be read to authorize congressional regulation of <u>any</u> intrastate possession of pornography on the theory that, in <u>some</u> cases, the possessed material eventually flows in interstate commerce.

---

formulation, one would be "hard pressed to posit any activity by an individual that Congress is without power to regulate."  <u>Lopez</u>, 514 U.S. at 564.

Therefore, in accordance with <u>Lopez</u> and <u>Morrison</u>, we should hold that this simple local possession of self-generated pornographic material, where no commercial activity was involved, no interstate transportation took place, and no congressional findings support the necessity of such regulation in the framework of a broader regulatory scheme, is beyond the reach of any reasonable interpretation of Congress' Commerce Clause power.

I respectfully dissent from the majority's contrary conclusion.