**UNITED STATES of America,
Plaintiff,**

**v.**

**Virgilio JERONIMO–BAUTISTA,
et. al., Defendants.**

**No. 2:04–CR–81 TS.**

United States District Court,
D. Utah,
Central Division.

May 20, 2004.

Michele M. Christiansen, Michael S. Lee, U.S. Attorney's Office, Salt Lake City, UT, for Plaintiff.

Mary C. Corporon, Corporon & Williams PC, Loni F. DeLand, Richard P. Mauro, Salt Lake City, UT, for Defendants.

MEMORANDUM DECISION AND OR-
DER GRANTING DEFENDANT'S
MOTION TO DISMISS FOR LACK
OF FEDERAL JURISDICTION
AND DISMISSING INDICTMENT
AGAINST DEFENDANT JERONI-
MO–BAUTISTA

STEWART, District Judge.

This matter is before the Court on De-
fendant Virgilio Jeronimo–Bautista's Mo-
tion to Dismiss for Lack of Federal Juris-
diction, filed March 10, 2004. A hearing
was held thereon on April 21, 2004. The
Court, having read the pleadings and the
file, having heard arguments of counsel,
being otherwise fully advised, and with due
deference to Congressional authority, will
hereby GRANT Defendant's Motion.

I. BACKGROUND

On February 11, 2004, Defendant was
charged with a single count of Sexual Ex-
ploitation of Children, in violation of 18
U.S.C. § 2251(a), and 18 U.S.C. § 2—Aid-
ing and Abetting.[1] On February 18, 2004,
Defendant entered a plea of not guilty to
the charge.

Count I is the only count pending
against Defendant Jeronimo–Bautista, and
he is the only Defendant alleging lack of
federal jurisdiction in this case. As such,
the Court will hereinafter refer to Mr.
Jeronimo–Bautista simply as "Defendant."

II. DISCUSSION

A. *Standard of Review.*

Fed.R.Crim.P. 12(b) provides for a
pre-trial challenge to a defect in an indict-
ment. Specifically with regard to whether
the Court has jurisdiction, Rule 12(b)(3)(B)
states that "at any time while the case is
pending, the court may hear a claim that

the indictment or information fails to in-
voke the court's jurisdiction ..." "An in-
dictment should be tested solely on the
basis of the allegations made on its face,
and such allegations are to be taken as
true." *United States v. Hall,* 20 F.3d
1084, 1087 (10th Cir.1994), citing *United
States v. Sampson,* 371 U.S. 75, 78–79, 83
S.Ct. 173, 9 L.Ed.2d 136 (1962).

For purposes of considering this Motion
to Dismiss, the Court makes all factual
inferences in favor of the government and
assumes that the government could prove
the facts alleged against Defendant at a
trial held herein. In other words, the
Court will assume that the government can
prove the factual basis for its criminal
allegations and will examine the legal suffi-
ciency of the alleged federal jurisdiction as
contained in the Indictment.

B. *Findings of Fact for Purposes of
this Motion to Dismiss.*

Fed.R.Crim.P. 12(d) requires that,
"[w]hen factual issues are involved in de-
ciding a motion, the court must state its
essential findings on the record." *See Id.*
The Court makes the following essential
findings of fact, all inferences from which
are made in favor of the government, for
the purposes of this Motion to Dismiss for
Lack of Federal Jurisdiction. The follow-
ing facts are not disputed by Defendant,
for purposes of this Motion only.

On or about January 29, 2004, a Salt
Lake County Sheriff's Department Deputy
responded to a call from a one-hour photo
laboratory in Salt Lake County—which is
located within the Central Division of the
District of Utah—to check on certain sus-
picious photographs that had been
dropped off to be developed. The manag-

---

1. Defendant was indicted with two co-defen-
dants—Xavier Lugo–Martinez and Andres
Sanpedro–Jeronimo—who have not joined in
this Motion. In addition, Andres Sanpedro–

Jeronimo was charged with a second count of
Possession of an Unregistered Sawed–Off
Shotgun.

er of the photo lab informed the Deputy that a Hispanic male had brought in a roll of analog film to be developed earlier that evening. During the development process, an employee noticed that the photos appeared to depict the sexual assault of a minor female (hereinafter "the victim"). It was later determined that the victim was 13 years old at the time of the assault. The photos, which were confiscated by the Deputy, depicted the victim, who appeared to be unconscious or dead,[2] being sexually assaulted by multiple men.[3]

For purposes of this Motion, the Defendant concedes that, on or about January 29, 2004, Defendant and his co-defendants were in the company of the victim. At some point on the evening in question, the victim became intoxicated and/or disabled. The three Defendants and the victim were in an unoccupied private residence in Utah at the time of the assault.

While the victim was unconscious, one or more of the Defendants removed the clothing of the victim, while in the presence of one or more of the other Defendants. The Defendants had a Kodak camera which was not manufactured within the State of Utah. The Defendants and/or each of them then proceeded to take photographs of the naked victim being sexually assaulted by each of the Defendants.

It is undisputed that each of the Defendants is a citizen of Mexico and resides in the State of Utah. The victim in this case was born within the State of Utah, and she was not transported across state lines, or internationally, for purposes of engaging in the behavior in question. The photos were never disseminated, were not stored or transmitted electronically via the Internet, the United States Postal Service, nor by any other method across state lines or internationally. There is no indication that any of the Defendants had any intention of so transmitting or storing the images.

All three Defendants in this case have been charged in state court with Sexual Exploitation of a Minor. Those state criminal prosecutions are currently pending in state court and are based upon the same facts and circumstances giving rise to the criminal allegations in this federal proceeding.

### C. *Applicable Law.*

### 1. *Indictment.*

Count I of the Indictment pending against Defendant alleges as follows:

On or about January 29, 2004, in the Central Division of the District of Utah, VIRGILIO JERONIMO–BAUTISTA ... defendant[ ] herein, did knowingly employ, use, persuade, induce, entice, and coerce a minor, A.B., to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions were produced using materials that have been mailed, shipped, and transported in interstate and foreign commerce, and did aid and abet [his co-defendants] therein; all in violation of Title 18, United States Code, Sections 2251(a) and 2 and punishable pursuant to Title 18, United States Code, Section 2251(d).

---

**2.** It was later determined that the victim was unconscious. The record is unclear as to how the victim became unconscious or whether the intoxicant employed was voluntarily ingested. However, for the purposes of the instant Motion, it is clear that the sexual assaults occurred while the victim was unconscious and while she was a minor.

**3.** Several other photos on the same roll of film depict the same men standing in front of a pick-up truck with the license plate visible on the pick-up truck. The Deputy used the license plate and the film drop-off information to assist in the location of the Defendants.

## 2. *Statute.*

Defendant was indicted under 18 U.S.C. § 2251(a), which reads as follows:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct *for the purpose of producing any visual depiction of such conduct,* shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, *if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means,* including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

(emphasis added).

The government does not allege, and the Indictment does not accuse, that Defendant knew or had reason to know that the visual depictions at issue were transported in interstate commerce, nor is it alleged that such visual depiction was actually transported in interstate commerce. Rather, federal jurisdiction is premised upon the fact that the camera used by Defendant, and the film upon which the images were recorded, previously had traveled in interstate and foreign commerce. As the government argues in its memorandum: "[n]either the Kodak Advantix camera or [sic] the Kodak Advantix film containing the negatives of the images were manufactured within the State of Utah, and had to cross state lines to arrive in Utah." Govt. Opposition Memo at p. 4.

Defendant contends that his alleged actions, even if proven, do not impact any federal interest or matter and do not involve any significant or substantial connection to interstate commerce. Defendant concedes that his actions may constitute a state crime (and he is being charged for such), but argues that no federal jurisdiction exists in this case.

The government counters that the statute is technically complied with, and that its application in this case is a proper exercise of federal jurisdiction.

## 3. *Constitutional basis*

The Commerce Clause—found at Section 8, clause 3 to Article I of the United States Constitution—grants to Congress the authority "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Chief Justice Marshall first defined the nature of Congress' power under the Commerce Clause in the landmark case of *Gibbons v. Ogden,* 22 U.S. 1, 9 Wheat. 1, 189–190, 6 L.Ed. 23 (1824): "Commerce, undoubtedly, is traffic, but it is something more: it is intercourse. It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse." *See also United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

The Supreme Court has reiterated that "[t]he Constitution creates a Federal Government of enumerated powers." *United States v. Lopez,* 514 U.S. 549, 552, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). That "enumeration presupposes something *not* enumerated." *Gibbons* at 195, 9 Wheat. 1 (emphasis added). The *Lopez* court quoted James Madison to support the fundamental Constitutional principle that "[t]he powers delegated by the ... Constitution to the federal government are few and

defined. Those which are to remain in the State governments are numerous and indefinite." The Federalist No. 45, pp. 292–293. Indeed, "[u]nder our written Constitution, ... the limitation of congressional authority is not solely a matter of legislative grace." *Morrison* at 616, 120 S.Ct. 1740; *See also Lopez* at 575–579, 115 S.Ct. 1624.

### 4. Caselaw

The Supreme Court has set forth that "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison* at 607, 120 S.Ct. 1740, citing *Lopez*. Federal authority is alleged by the government to exist in this case by virtue of the Commerce Clause.

In *Morrison,* the Court recognized that "one of the few principles that has been consistent since the [Commerce] Clause was adopted," is that "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id.* at 618, 120 S.Ct. 1740. Further, "[t]he Constitution requires a distinction between what is truly national and what is truly local." *Id.* at 617–618, 120 S.Ct. 1740. The Supreme Court has also noted that, "[j]ust as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft,* 501 U.S. 452, 458, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).

### a. Commerce Clause Authority

Even with the historic expansion of Congress' authority under the Commerce Clause, the Supreme Court has unequivocally held that "this power is subject to outer limits." *Lopez* at 557, 115 S.Ct. 1624. Indeed, "the scope of the interstate commerce power 'must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.'" *Lopez* at 557, 115 S.Ct. 1624, citing *N.L.R.B. v. Jones Laughlin Steel,* 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893 (1937). In *Maryland v. Wirtz,* 392 U.S. 183, 188, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), the Court reaffirmed that "the power to regulate commerce, though broad indeed, has limits" which the Court has "ample power" to enforce.

The Supreme Court has consistently held that there are "three broad categories of activity that Congress may regulate under its commerce power": 1) the use of the *channels* of interstate commerce; 2) the *instrumentalities* of interstate commerce, or persons or things in interstate commerce, "even though the threat may come only from intrastate activities"; and 3) those *activities* having a substantial relation to interstate commerce. *Morrison* at 609, 120 S.Ct. 1740 (internal citations omitted); see also *Lopez* at 558–559, 115 S.Ct. 1624.

At the outset, the Court makes the initial finding that the instant case falls within the third category—the regulation of activities having a substantial relation to interstate commerce. The *Lopez* court identified that, "consistent with the great weight of our case law, ... the proper test requires an analysis of whether the regulated activity 'substantially affects' inter-

state commerce.'" *Id.* at 559, 115 S.Ct. 1624.

It has never been the position of the Supreme Court that "Congress may use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities." *Wirtz* at 196 n. 27, 88 S.Ct. 2017. In order for federal jurisdiction under the Commerce Clause to attach, the "substantial affect" must be economic in nature. Indeed, the *Morrison* court stated that, "thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." *Id.* at 613, 120 S.Ct. 1740.

### b. *Regulation of criminal activity under the Commerce Clause*

"Under our federal system, the 'States possess primary authority for defining and enforcing the criminal law.'" *Lopez* at 561 n. 3, 115 S.Ct. 1624, quoting *Brecht v. Abrahamson,* 507 U.S. 619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)(internal citations partially omitted). The Supreme Court has historically held that Congress may not regulate non-economic, violent criminal conduct: "The regulation and punishment of intrastate violence that is not *directed at* the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Morrison* at 618, 120 S.Ct. 1740 (emphasis added).

In *Morrison,* the Supreme Court noted that "we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Id.* at 618, 120 S.Ct. 1740. In *Lopez,* it was noted that "[t]he Constitution ... withhold[s] from Congress a plenary police power." *Id.* at 574–585, 115 S.Ct. 1624. The concurrence in *Lopez* noted that the Supreme Court has "*always* ... rejected

readings of the Commerce Clause and the scope of federal power that would permit Congress to exercise a police power." *Id.* at 596–597, 115 S.Ct. 1624 (emphasis in original).

"When Congress criminalizes conduct already denounced as criminal by the States, it effects a 'change in the sensitive relation between federal and state criminal jurisdiction.'" *United States v. Enmons,* 410 U.S. 396, 411–412, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973)(internal citations omitted); *See also Lopez* at 561 n. 3, 115 S.Ct. 1624.

### D. *Application of the law to the facts of this case*

Having set forth the parameters for federal jurisdiction to vest under the Commerce Clause, the Court will now turn to the facts of this case.

The Court notes that the Tenth Circuit has yet to rule on this issue. While Sister Circuits have made rulings appearing at a variety of points on the Commerce Clause map, the Tenth Circuit has only interpreted the Commerce Clause under this analysis in dealing with drug and firearm cases. *See, e.g. United States v. Price,* 265 F.3d 1097 (10th Cir.2001); *United States v. Haney,* 264 F.3d 1161 (10th Cir.2001).

The issue of the constitutionality of 18 U.S.C. § 2251(a) as applied to similar facts was recently addressed in *United States v. Matthews,* 300 F.Supp.2d 1220 (N.D.Ala. 2004). The defendant in *Matthews* was charged under both § 2251(a) and § 2252 for videotaping himself engaged in various sexual acts with a minor. In that case, the court found both statutes to be unconstitutional as applied to the facts presented.

The *Matthews* court accurately grasped the issue before this Court:

No decent citizen condones ... the sexual exploitation of minors for the satis-

faction of deviate sexual desires. That is why [the state] has criminalized the conduct charged in the Indictment. Thus, the question of whether Defendant should be subject to criminal sanctions for his actions is not the issue confronting this Court. Rather, the fundamental question raised by defendant's motion is whether Congress exceeded its powers under the Commerce Clause of the United States Constitution when enacting statutes which, when applied to facts such as those presented here, make the simple *intra*-state production and possession of visual depictions of a minor engaging in sexually explicit conduct a federal offense, even though those images were not mailed, shipped, or transported in interstate or foreign commerce by any means ... and there is no evidence that the visual depictions were intended for interstate distribution or economic activity of any kind, including exchange of the pornographic [images] for other prohibited materials.

*Id.* at 1223–24 (emphasis in original).

The Court wishes to make it abundantly clear that the facts and nature of this crime, as stipulated to for purposes of this Motion, are shocking and abhorrent. Defendant's actions no less than stripped the humanity and innocence from a child. The Court's legal analysis on the as-applied constitutionality of this statute under the Commerce Clause in no way minimizes the obscene and brutal behavior of Defendant or its impact upon the victim in this case. This kind of behavior must be swiftly and justly punished to protect the victim and society at large. The question before the Court, however, is whether the Constitution of the United States intends that such conduct be deemed a federal crime thus vesting this Court with jurisdiction over this crime.

As noted, Defendant is being simultaneously prosecuted in state court on charges of Sexual Exploitation of a Minor. The Court's decision here does not render Defendant's behavior untouched by punishment.

### 1. Factors to Consider

■ The *Morrison* court delineated four factors originally set forth in *Lopez* for consideration in addressing the constitutionality of a statute based upon Commerce Clause authority: 1) Is the prohibited activity commercial or economic in nature? 2) Is there an express jurisdictional element involving interstate activity which might limit the statute's reach? 3) Did Congress make findings about the effects of the prohibited conduct on interstate commerce? and 4) Is the link between the prohibited activity and the effect on interstate commerce attenuated? *See United States v. Corp,* 236 F.3d 325, 329 (6th Cir.2001).

### a. Economic/commercial nature

As *Lopez* summarized, "[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." *Id.* at 560, 115 S.Ct. 1624. Conversely, the Supreme Court has "upheld Commerce Clause regulation of intrastate activity *only where that activity is economic in nature.*" *Morrison* at 613, 120 S.Ct. 1740 (emphasis added).

Further, the alleged economic activity cannot be considered to substantially affect interstate commerce based upon the argument that the otherwise solely intrastate activity affected interstate commerce in an *aggregate* fashion. Indeed, the *Morrison* Court established its outright rejection of

> the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.... In recognizing this fact, we

preserve one of the few principles that has been consistent since the Clause was adopted. The regulation and punishment of intrastate violence that is not *directed at* the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the states.

*Id.* at 617–18, 120 S.Ct. 1740 (internal citations omitted)(emphasis added), citing *Lopez* at 567–68, 115 S.Ct. 1624.

In *Lopez,* the Court reasoned that if the regulation of intrastate possession of a weapon (and in *Morrison,* intrastate violent criminal conduct) is justified based upon its aggregate affect on interstate commerce, "we are hard pressed to posit any activity by an individual that Congress is *without* power to regulate." *Lopez* at 564, 115 S.Ct. 1624; *Morrison* at 613, 120 S.Ct. 1740 (emphasis added).

The Court agrees with the holding in *Matthews:* "Although some, if not most, child pornography may certainly be the product of commercial enterprise, it does not follow that *all* child pornography is the product of, or intended for distribution in, a market pandering to other perverts. The exploitation of a minor in home-produced [ ] recording of sexual acts is, unquestionably, despicable; but when it is done with no intention to sell, distribute, or exchange the tapes thus produced it is not 'commerce.'" *Id.* at 1228.

The *Lopez* decision itself was based upon the holding that the mere possession of a prohibited object does not necessarily render it "commercial" in nature, and thereby subject to Congressional regulation under the Commerce Clause. It is difficult to conceive of an activity any less commercial that the "simple local possession of a good produced for personal use only." *United States v. Kallestad,* 236 F.3d 225, 231 (5th Cir.2000) (Jolly, J., dissenting).

In sum, the Court cannot make the finding that the facts here constitute an economic activity that, through repetition elsewhere, may substantially affect interstate commerce. *See Lopez* at 563–67, 115 S.Ct. 1624.

b. *Limiting, express jurisdictional element*

In determining the constitutionality of a statute under Commerce Clause authority, a Court should consider whether the statute contains a "jurisdictional element which would ensure, through case-by-case inquiry, that the [violation] in question affects interstate commerce." *Lopez* at 561, 115 S.Ct. 1624. "A jurisdictional element, as the term has been used in and after *Lopez,* refers to a provision in a federal statute that requires the government to establish specific facts justifying the exercise of federal jurisdiction in connection with any individual application of the statute." *United States v. Rodia,* 194 F.3d 465, 471 (3rd Cir.1999)(internal citations omitted).

"The mere presence of a jurisdictional element ... does not in and of itself insulate a statute from judicial scrutiny under the Commerce Clause, or render it per se constitutional. To the contrary, courts must inquire further to determine whether the jurisdictional element has the requisite nexus with interstate commerce. We must, therefore, determine whether the jurisdictional component in this case limits the statute to items that have an explicit connection with, or effect upon, interstate commerce." *United States v. Bishop,* 66 F.3d 569, 585 (3rd Cir.1995).

Although the *Rodia* court upheld the constitutionality of a similar statute on other grounds, with respect to the jurisdictional element, the court found that the element did not pass constitutional muster by itself. "As a practical matter, the limiting jurisdictional factor is almost useless

here, since all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce and will therefore fall within the sweep of the statute." *Id.* at 473.

The "jurisdictional hook" which the government argues attaches here is that the camera and film used by Defendant incidental to his state crime had moved in interstate and foreign commerce prior to the date on which those objects were used to capture the visual depictions of Defendant engaging in sexually explicit conduct with the minor victim. This so-called "limiting" jurisdictional provision, as it applies to this case, fails to place any meaningful restrictions on federal jurisdiction and fails to establish the link between the violation and interstate commerce.

The Court finds that the jurisdictional element here fails to adequately perform the "function of guaranteeing the final product regulated substantially affects interstate commerce." *Id.* Further, there is nothing in this element that "ensure[s], through case-by-case inquiry, that the [violation] in question affects interstate commerce." *Lopez* at 561, 115 S.Ct. 1624.

#### c. Congressional findings

Congress made specific findings when they passed the statute in question. Among those findings are: "child exploitation has become a multi-million dollar industry, infiltrated and operated by elements of organized crime, and by a nationwide network of individuals openly advertising their desire to exploit children;" "child pornography has developed into a highly organized, multi-million-dollar industry which operates on a nationwide scale;" and "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society." *See* Pub.L. No. 99–500, 98–292.

■ However, the mere existence of such Congressional findings "is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation" as applied to the facts of this case. *Morrison* at 614, 120 S.Ct. 1740. It is within the sound judgment of the judiciary to determine whether the intrastate activity "affect[s] interstate commerce sufficiently to come under the constitutional power of Congress to regulate them." *Id.*, quoting *Lopez* at 557 n. 2, 115 S.Ct. 1624.

As applied to Defendant in this case, the statute in question exceeds the authority expressly enumerated to Congress by the Commerce Clause. It is undisputed that no actual visual depictions of the victim were mailed, shipped, or transported in interstate or foreign commerce. There is no allegation that Defendant intended to sell, distribute, or exchange the images in any market—state, local or foreign. There is also no allegation that the images were ever intended to enter the national child pornography industry that was the concern of Congress when enacting § 2251. *See Matthews* at 1232.

The Court agrees with the *Matthews* court in finding that "[n]o legislative findings exist with respect to the interstate effects of the strictly intra-state, non-commercial, production and possession of the [visual depictions] at issue here. As such, the court cannot find that the intra-state conduct for which defendant has been prosecuted had a 'substantial' effect on interstate commerce, based upon legislative history or congressional pronouncements." *Id.*

#### d. Attenuated link

The Court has already made numerous references to what it considers to be a tenuous link between the conduct at issue in this case and the exercise of federal jurisdiction over it. The government has failed to establish a sufficient link or nexus

between the charged conduct and its effect on interstate commerce. Furthermore, such a link must be "substantial." *See Lopez.*

The link argued by the government is so tenuous as to render it meaningless in this case, in light of the restrictions on Commerce Clause authority recently reiterated in *Lopez* and *Morrison.* The only bridge the Court can surmise between the Defendant's actions in this case and the harms identified by Congress to justify federal jurisdiction here would be based on the aggregation of local effects. Outside of that already rejected theory, it cannot be said that Defendant's actions here had a "substantial effect" on interstate commerce.

"To allow Congress to regulate local crime on a theory of its aggregate effect on the national economy would give Congress a free hand to regulate any activity, since, in the modern world, virtually all crimes have at least some attenuated impact on the national economy.... Furthermore, it would transfer to Congress a general police power that the Constitution denies the federal government and reposes in the states." *United States v. Ballinger,* 312 F.3d 1264, 1271 (11th Cir.2002)(citing *Morrison* at 615, 120 S.Ct. 1740).

The State of Utah has already exercised its sound discretion and authority in making it a crime to engage in the acts charged in the Indictment in this case. "When Congress criminalizes conduct already denounced as criminal by the States, it affects a change in the sensitive relation between federal and state criminal jurisdiction." *Lopez* at 561 n. 3, 115 S.Ct. 1624.

The *Matthews* court reasoned as follows:

If Congress can regulate the making and possession of child pornography under the facts presented in this case, then there is nothing outside the purview of congressional regulation, "even in areas such as criminal law enforcement or ed-ucation where States historically have been sovereign." Despite Congress's admirable goal of stamping out the reprehensible activity surrounding the creation of child pornography, the court is mindful of its "duty to recognize meaningful limits on the commerce power of Congress."

*Id.* at 1233 (citing *Lopez* at 564, 580, 115 S.Ct. 1624, respectively).

The government's position that the incidental use of a camera that previously crossed state lines supports an exercise of federal jurisdiction under the Commerce Clause represents a marked expansion of federal authority based upon what the Court views as a tenuous link. Technical compliance, as the Supreme Court illustrated in both *Lopez* and *Morrison,* does not necessarily mean substantive compliance with the restrictions on Commerce Clause authority.

The question of the appropriate reach of federal jurisdiction under the Commerce Clause "is necessarily one of degree." *Laughlin Steel* at 37, 57 S.Ct. 615. Consider the following:

There is a view of causation that would obliterate the distinction between what is national and what is local in the activities of commerce. Motion at the outer rim is communicated perceptibly, though minutely, to recording instruments at the center. A society such as ours 'is an elastic medium which transmits all tremors throughout its territory; the only question is of their size.'

*A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 554, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) (Cardozo, J., concurring) (internal citations omitted). This "size" or degree of the link here is not sufficient to uphold federal jurisdiction in this case.

2. *Meaningful limits*

The statute in question—18 U.S.C. § 2251(a)—is commonly applied to the sex-

ual exploitation of minors by way of technological or electronic means, which more readily implicate the crossing and state and even national boundaries, but there is nothing inherent in the statute that would require such a limitation. At the hearing in this matter, the Court inquired of the parties about other acts which may technically fall within the statute. The statute only requires that the "visual depiction [of a minor engaged in sexually explicit conduct] was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means ..." It is logically conceivable that a person could create a "visual depiction" of a nude minor child using materials—such as a paper and pen or canvas and paint—that have crossed state lines and thus fall within the statute.[4]

The Court must ask, what meaningful limit—outside of "legislative grace" and charging discretion on the part of the government—is there on the exercise of Congress' commerce power within this statute?

■ The gravamen of this offense is the personal, violent and sexual assault against the victim—all serious violations of state criminal law. The fact that the camera and film, at some point prior to this offense, traveled in interstate commerce is a stretch, indeed, to establish federal jurisdiction in this case.

As established, the Commerce Clause is, by constitutional design, limited in its grasp. To hold that the application of this statute to these facts is valid and constitutional would be to say that the Commerce Clause has a virtually unlimited scope. It follows, then, that the statute, as applied to the facts of this case, is unconstitutional.

The Court finds that Defendant's actions in this case, despicable as they may be, are "in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Lopez* at 567, 115 S.Ct. 1624. As such, there does not exist the required nexus to establish federal jurisdiction under the Commerce Clause in this case.

The Court here, in the light of *Lopez* and *Morrison,* believes that, to find otherwise under these facts, would be to "conclude that the Constitution's enumeration of powers does not presuppose something not enumerated and that there never will be a distinction between what is truly national and what is truly local." *Id.* In such violence to the first principles of the Constitution, the Court does not wish to join.

### E. *Finding of unconstitutional "as applied"*

The Court hereby finds that the statute in question—18 U.S.C. § 2251(a)—is unconstitutional, as applied to the facts of this case. Defendant's activity was not of a type demonstrated to be *substantially* connected or related to interstate commerce on the facts of this case. The Court is not persuaded that a sufficient nexus with interstate commerce has been established to warrant such a bold expansion of federal jurisdiction in a matter historically reserved to the States.

As noted, Count I is the only count pending against Defendant. Therefore, given the Court's finding of the unconstitutionality of 18 U.S.C. § 2251(a)[5] as applied

---

4. When posed with this question, counsel for the government countered that such an image would not fall within the statutory definition of "child pornography." However, the portion of the statute in question does not require

that the "visual depiction" meet that definition.

5. Defendant has also been indicted under 18 U.S.C. § 2—Aiding and Abetting. However, the Court's finding here negates any possibili-

to the facts of this case, the Court must also dismiss the Indictment against Defendant.

## III. CONCLUSION

Based upon the above, it is hereby

ORDERED that Defendant's Motion to Dismiss for Lack of Federal Jurisdiction is GRANTED; it is further

ORDERED that the single count of the Indictment—Count I, Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a)—pending against Defendant Virgilio Jeronimo–Bautista is DISMISSED.

SO ORDERED.

ty that Defendant could be found to have aided and abetted in the violation of an un-

constitutional, as-applied, statute.