<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 UNITED STATES COURT OF APPEALS
                     FOR THE FIRST CIRCUIT
                      ____________________

No. 97-1523

                         UNITED STATES,

                           Appellee,

                               v.

                      GILBERT A. ROBINSON,

                     Defendant - Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. Joseph L. Tauro, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Boudin, Circuit Judge,

and Woodlock, District Judge.

                     _____________________

   Eugene Patrick McCann, with whom Charles S. Nierman and Manzi and McCann were on brief for appellant.
   David J. Apfel, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.

                      ____________________

March 2, 1998
                                ____________________  TORRUELLA, Chief Judge.  Defendant Gilbert A. Robinson appeals his conviction for possession of child pornography in violation of 18 U.S.C.  2252(a)(4)(B).  He was sentenced to a term of imprisonment of eighteen months to be followed by three years of supervised release.  Robinson argues that his rights under the Due Process Clause were violated because he did not have fair notice that his possession of the pornographic materials at issue had become illegal, and he lacked actual knowledge of the jurisdictional element of the charged offense.  He also asserts that  2252(a)(4)(B) exceeds Congress's authority under the Commerce Clause.  We affirm.
                         I.  BACKGROUND               Section 2252(a)(4)(B), which took effect on November 29, 1990, prohibits the simple possession of three or more sexually explicit photographs of minors.  18 U.S.C.  2252(a)(4)(B).  Until 1990, Congress had not declared the possession of child pornography illegal.  See United States v. Robinson, __ F. Supp. __, __, 1997 WL 136430, at *1 (D. Mass. March 7, 1997) (sentencing memorandum).  Robinson was charged with possessing the photographs at issue in 1995, five years after the effective date of the statute, and between ten and seventeen years after the photographs were taken.  Id.
         The fifty photographs presented by the government at trial were recovered incident to an April 19, 1995 search of Robinson's home.  The photographs depict boys in their mid- to late teens in nude poses.  All of the photographs are color, instant photographs, and the borders of each include handwritten descriptive information about the boys, e.g., names, ages, dates on which the photographs were taken.  Four of the photographs graphically depict boys engaged in sexual acts.  Robinson stipulated that on the date of the search, he knowingly possessed the fifty photographs introduced into evidence.  He further stipulated that the fifty photographs were all taken using a Kodak instant camera and Kodak instant film, both of which were manufactured by the Eastman Kodak Company outside of Massachusetts.  In light of the evidence, the jury returned a guilty verdict.
                        II.  DISCUSSION     We review de novo constitutional challenges to federal statutes.  United States v. Cardoza, 129 F.3d 6, 10 (1st Cir. 1997).
         A.   Due Process Challenge
         The Due Process Clause of the Fifth Amendment has been interpreted to require that criminal defendants be given "fair notice of the standard of conduct to which they can be held accountable."  United States v. Maravilla, 907 F.2d 216, 229 (1st Cir. 1990); see also United States v. Batchelder, 442 U.S. 114, 123 (1979); United States v. Harris, 347 U.S. 612, 617 (1954); Lanzettav. New Jersey, 306 U.S. 451, 453 (1939).  Prior to November 29, 1990, Robinson's simple possession of the sexually explicit photographs of teenage boys was legal under both federal and state law.  Robinson notes that, after the 1990 enactment of  2252(a)(4)(B), his continued possession of these photographs instantly and without prior notice subjected him to federal criminal prosecution.  He argues that this lack of notice violates due process.
         In asserting his claim, Robinson relies substantially on Lambert v. California, 355 U.S. 225 (1957), and its progeny.  In Lambert, the Supreme Court reversed the conviction of a woman who violated a municipal ordinance making it illegal for a convicted felon to remain in Los Angeles for more than five days without registering with the police.  The Court held that the felon registration ordinance violated due process when applied to a person who had "no actual knowledge of his duty to register, and where no showing [was] made of the probability of such knowledge."  Id. at 227.  The Supreme Court noted that the conduct at issue was "wholly passive" and did not involve "circumstances that should alert the doer to the consequences of his deed."  Id. at 228.  Thus, based on due process considerations, Lambert established a limited exception to the well-known rule, "ignorance of the law is no excuse."
         The Lambert exception does not apply to the instant case.  Child pornography offends the moral sensibility of the community at large.  Indeed, "the child pornography laws are directly related to [this] commonly understood moral censure."  United States v. Moncini, 882 F.2d 401, 406 (9th Cir. 1989).  The fact that these criminal laws are consistent with community moral standards ensures the probability of notice.  "The very nature of child pornography, which is commonly regulated throughout the world, should cause a reasonable person to investigate the laws . . . ."  Id.  Consequently, Robinson may be expected to be aware of adjustments in the law, including the enactment of  2252(a)(4)(B).  Despite Robinson's arguments to the contrary, the instant case is akin to cases involving inherently dangerous or deleterious products where the "probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation."  United States v. International Minerals & Chem. Corp., 402 U.S. 558, 565 (1971) (upholding conviction for shipment of industrial acids without including warning labels as required by federal law); see alsoUnited States v. Freed, 401 U.S. 601 (1971) (possession of unregistered hand grenades).
         Robinson also asserts that due process requires a showing that he had actual knowledge that the photographs in question (or the materials used to produce such photographs) had been transported in interstate commerce.  Section 2252(a)(4)(B) provides, in relevant part:
         Any person who . . . knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if--
           (i)  the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
           (ii) such visual depiction is of such conduct;
         shall be punished as provided in subsection (b) of this section.

18 U.S.C.  2252(a)(4)(B) (emphasis added).  According to Robinson, the adverb "knowingly" modifies not only the verb "possesses" but also the phrase "mailed, or has been shipped or transported in interstate or foreign commerce."
         Robinson bases his statutory interpretation on United States v. X-Citement Video, Inc., 513 U.S. 64 (1994), in which the Supreme Court held that the word "knowingly" in 18 U.S.C.  2252(a)(1) and (2) applies not only to the relevant verbs, i.e., transporting, shipping, receiving, distributing and reproducing, but also to the phrase "use of a minor" in subsections 2252(a)(1)(A) and (2)(A).  Thus, no criminal liability arises under  2252(a)(1) and (2) unless the government shows, inter alia, that the defendant had knowledge of the minority of the persons used or depicted.  Extending this logic, Robinson contends that "knowingly" in  2252(a)(4)(B) modifies everything after that word up to and including the phrase "use of a minor" in subsection 2252(a)(4)(B)(ii).  Therefore, Robinson argues, he cannot be convicted under the statute unless the government proves that Robinson knew the photographs or the materials used to produce the photographs had travelled in interstate commerce.
         Robinson's reliance on X-Citement Video is unavailing.  The X-Citement Video Court required knowledge of the minority of persons used or depicted because the "presumption in favor of a scienter requirement should apply to each of the statutory elements which criminalize otherwise innocent conduct."  513 U.S. at 72.  According to the Court, if such a presumption did not apply to this element, the statute would sweep into its ambit "actors who had no idea that they were even dealing with sexually explicit material."  Id. at 69.  The Court offered the example of a Federal Express courier who, by delivering a box which the shipper has declared to contain film, "knowingly transports" such film, which is later discovered to contain visual depictions of children engaged in sexually explicit conduct.  Id.
         We do not have the same concern with the interstate commerce element, which confers federal jurisdiction over the crime.  The X-Citement Video Court itself distinguished age of minority from "'jurisdictional fact[s]' that enhance[] an  offense otherwise committed with an evil intent."  Id. at 73 n.3 (citing United States v. Feola, 420 U.S. 671 (1975)).  Feola held that a statute prohibiting assault against federal officers could not be interpreted as including a requirement that the assailant be aware that his victim is a federal officer.  See 420 U.S. at 684.  Feolainstructs that "the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."  Id. at 677.  As the Supreme Court further noted in X-Citement Video, "[c]riminal intent . . . does not require knowledge of the precise consequences that may flow from that act once [one becomes] aware that the act is wrongful."  513 U.S. at 73 n.3.  Such language in X-Citement Video strongly suggests that had that Court been presented with the jurisdictional element issue raised by Robinson, it would have found no due process violation.  Accordingly, we reject Robinson's contention that the government needed to prove he had actual knowledge of the jurisdictional element of  2252(a)(4)(B).B.  Commerce Clause Argument
         Robinson also challenges  2252(a)(4)(B) as beyond Congress's authority under the Commerce Clause, citing the Supreme Court decision in United States v. Lpez, 514 U.S. 549 (1995).  The Lpez Court found permissible Congress's regulation of three categories of activities under the Commerce Clause:
         First, Congress may regulate the use of the channels of interstate commerce.  Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from intrastate activities.  Finally, Congress' commerce authority includes the power to regulate . . . those activities that substantially affect interstate commerce.

Id. at 558-59.  In Lpez, the Court struck down the Gun-Free School Zones Act of 1990 ("GFSZA"), 18 U.S.C.  922(q), which made it a federal offense for any individual to knowingly possess a firearm within a school zone, as exceeding Congress's Commerce Clause authority.  Finding that the GFSZA regulated conduct potentially falling within the third class of activities, the Supreme Court noted that the statute "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce."  514 U.S. at 561.  Furthermore, the Court held that "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce."  Id. at 567.
         Robinson contends that  2252(a)(4)(B), like the GFSZA, can be upheld, if at all, only under category three, i.e., the regulation of activities that substantially affect interstate commerce.  Against this challenge, we hold that Congress properly exercised its powers under the Commerce Clause in enacting  2252(a)(4)(B).
         Section 2252(a)(4)(B), in contrast to the GFSZA, contains an explicit jurisdictional element requiring that the visual depictions in question, or the materials used to create such depictions, be "mailed, . . . shipped or transported in interstate or foreign commerce . . . ."  18 U.S.C.  2252(a)(4)(B).  The jurisdictional element in  2252(a)(4)(B) requires an answer on a case-by-case basis to the question whether the particular possession of child pornography affected interstate commerce.
         We find  2252(a)(4)(B), viewed as a category three regulation, to be a proper exercise of Congress's power under the Commerce Clause.  Congress enacted  2252 based, in large part, upon its "finding that 'child pornography and child prostitution have become highly organized, multimillion dollar industries that operate on a nationwide scale,' and 'that such prostitution and the sale and distribution of such pornographic materials are carried on to a substantial extent through mails and other instrumentalities of interstate and foreign commerce.'"  United States v. Winningham, 953 F. Supp. 1068, 1074 n.13 (D. Minn. 1996) (quoting S. Rep. No. 95-438, at 3-5 (1978), reprinted in 1978 U.S.C.C.A.N. 40, 42-43).  By outlawing the purely intrastate possession of child pornography in  2252(a)(4)(B), Congress can curb the nationwide demand for these materials.  Cf. Cardoza, 129 F.3d at 12 (finding statute prohibiting felon from possessing ammunition regulates demand side of market in handguns).  We believe that such possession, "through repetition elsewhere," 514 U.S. at 567, helps to create and sustain a market for sexually explicit materials depicting minors.  Accordingly,  2252(a)(4)(B) passes constitutional muster.
                       III.  CONCLUSION     For the foregoing reasons, we affirm the judgment of the district court.

</body>

</html>