# United States Court of Appeals
## For the First Circuit

No. 02-2695

UNITED STATES OF AMERICA,

Appellee,

v.

ELVIN TOMÁS MORALES-DE JESÚS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Lynch and Lipez, Circuit Judges,
and Oberdorfer,* Senior District Judge.

Juan Matos-de-Juan, with whom Joseph C. Laws, Jr., Federal
Public Defender, and Maria T. Arsuaga, Assistant Federal Public
Defender, were on brief, for appellant.
Nelson Pérez-Sosa, Assistant U.S. Attorney, with whom H.S.
Garcia, U.S. Attorney, and Sonia I. Torres-Pabón, Assistant U.S.
Attorney, were on brief, for appellee.

June 9, 2004

*Of the United States District Court for the District of
Columbia, sitting by designation.

**LIPEZ,** <u>**Circuit Judge**</u>. Elvin Tomás Morales-De Jesús ("Morales") was convicted by a jury of violating 18 U.S.C. § 2251(a) for using materials mailed, shipped, and transported in interstate or foreign commerce to produce a video recording of his sexually explicit encounters with a minor. On appeal, he argues that 18 U.S.C. § 2251(a), facially and as applied, is an unconstitutional exercise of Congress's Commerce Clause power, and that the evidence presented at trial was insufficient to sustain a conviction. Finding appellant's arguments unavailing, we affirm.

## I.

For purposes of our analysis, we can avoid recounting most of the lurid details of this case. In short, Morales induced a thirteen-year-old girl, who was his god-daughter and a member of his church, to have sex with him in a motel on at least five separate occasions. During the final two encounters, Morales used materials and equipment that had moved in interstate commerce to videotape the pair's sex acts. After his wife discovered the tape in the backseat of his car and played it, she informed the girl's parents, who then contacted police. Morales was duly arrested, charged, and indicted for two counts of violating 18 U.S.C. § 2251(a), which provides in pertinent part that

> [a]ny person who employs, uses, persuades,
> induces, entices, or coerces any minor to
> engage in . . . sexually explicit conduct for
> the purpose of producing any visual depiction
> of such conduct[] shall be punished as
> provided under subsection (d), . . . if that

-2-

                    visual depiction was produced using materials
                    that have been mailed, shipped, or transported
                    in interstate or foreign commerce by any means
                    . . . .

18 U.S.C. § 2251(a).

Morales's three-day jury trial produced a guilty verdict on both counts. After the defendant unsuccessfully moved for a judgment of acquittal, he was sentenced to 135 months of imprisonment and three years of supervised release on each count, to be served concurrently, and fined $1,000 with a special monetary assessment of $100. The district court ordered the federal sentence to be served concurrently with a 25-year state sentence based on charges filed for the same conduct at issue here. This appeal followed.

## II.

### A. Constitutional Claim

Morales appears to bring both facial and as-applied challenges to the constitutionality of § 2251(a). Relying on United States v. Lopez, 514 U.S. 549 (1995) and United States v. Morrison, 529 U.S. 598 (2000), Morales urges that § 2251(a) is unconstitutional because it attempts to regulate intrastate child pornography created exclusively for personal use which, Morales argues, does not affect interstate commerce. Morales further argues that even if the statute is facially constitutional, it is unconstitutional as applied to him because his activities were not commercial in nature and did not implicate interstate commerce. We

-3-

review constitutional challenges de novo. <u>United States</u> v. <u>Robinson</u>, 137 F.3d 652, 653 (1st Cir. 1998).

Section 2251(a) is part of a broad regulatory scheme that prohibits the production, receipt, transmission, and possession of child pornography. <u>See</u> 18 U.S.C. §§ 2251, 2252, 2252A. When this statute was originally enacted as part of the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2(a), 92 Stat. 7, 8 (1978)(codified at 18 U.S.C. §§ 2251 et seq.)("the Act"), it targeted production of child pornography only if the pornographic depiction itself was transported in interstate commerce, or if the defendant knew, or should have known, that the depiction would be transported in interstate commerce. In 1998, Congress amended the Act by adding the jurisdictional element we have before us today: only the materials used to produce the pornographic depictions must "have been mailed, shipped, or transported in interstate or foreign commerce by any means . . . ." to subject a potential defendant to liability. 18 U.S.C. § 2251(a).

1.    <u>Lopez and Morrison</u>

Morales argues that the "materials-in-commerce" jurisdictional element in § 2251(a) is an unconstitutional exercise of Congress's Commerce Clause power[1] in light of <u>United States</u> v.

_____

[1]Article I, § 8 of the United States Constitution provides that "[t]he Congress shall have Power To . . . regulate Commerce with foreign Nations, and among the several States . . . ."

-4-

Lopez, 514 U.S. 549 (1995) and United States v. Morrison, 529 U.S. 598 (2000). In Lopez, the Supreme Court struck down the Gun-Free School Zones Act of 1990 (GFSZA), 18 U.S.C. § 922(q)(1)(A), which prohibited knowingly possessing a firearm within 1000 feet of a school. The Supreme Court enumerated three categories of activities that Congress may properly regulate pursuant to the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce.

Lopez, 514 U.S. at 558-59 (citations omitted). Since the GFSZA regulated neither channels nor instrumentalities of interstate commerce, the Lopez Court analyzed the statute under the third category: activities that substantially affect interstate commerce. Id. at 559.

In finding the GFSZA constitutionally infirm, the Supreme Court held that because the statute "by its terms has nothing to do with 'commerce' or any sort of economic enterprise," it could not be upheld under precedents that approved "regulations of activities that . . . are connected with a commercial transaction that, when viewed in the aggregate, substantially affects interstate

-5-

commerce." Id. at 561.  Second, the Court observed that the GFSZA lacked a jurisdictional element that would "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." Id.  Finally, the Court stated that although congressional findings about the "legislative judgment that the activity in question substantially affected interstate commerce" were not required, such findings would have helped the Court evaluate the impact of the activity on interstate commerce "even though no such substantial effect was visible to the naked eye." Id. at 563.  Based on these considerations, the Court found the GFSZA to be unconstitutional. Id. at  567-68.

The Supreme Court amplified Lopez's holding five years later in Morrison, when the court evaluated a federal civil remedy for victims of gender-based violence, as set forth in the Violence Against Women Act of 1994 ("VAWA"), 42 U.S.C. § 13981 ("A person . . . who commits a crime of violence motivated by gender . . . shall be liable to the party injured, in an action for the recovery of compensatory and punitive damages . . . .").  There, as in Lopez, the court was faced with another so-called category three regulation, pertaining to activities that allegedly have a substantial relation to interstate commerce. Morrison, 529 U.S. at 600.  Drawing on its reasoning in Lopez, the Morrison Court identified four factors to consider in determining whether a statute regulates an activity that has a substantial effect on

-6-

interstate commerce: (1) whether the statute regulates economic or commercial activity; (2) whether the statute contains an "express jurisdictional element" that limits the reach of its provisions; (3) whether Congress made findings regarding the regulated activity's impact on interstate commerce; and (4) whether "the link between [the regulated activity] and a substantial effect on interstate commerce was attenuated." Id. at 610-12.

In striking down the VAWA, the Court found that "gender-motivated crimes of violence are not, in any sense of the phrase, economic activity," and that the statute lacked a jurisdictional element "establishing that the federal cause of action is in pursuance of Congress's power to regulate interstate commerce." Id. at 613. Further, the Court held that while Congress had made explicit findings "regarding the serious impact that gender-motivated violence has on victims and their families, . . . the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation." Id. at 614. Finally, the Court found that a "causal chain from the initial occurrence of violent crime . . . to every attenuated effect upon interstate commerce . . . would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption." Id. at 615.

2. The Constitutionality of § 2251(a) on Its Face

-7-

Because § 2251(a) regulates neither channels nor instrumentalities of interstate commerce, we analyze the constitutionality of the statute as a category three regulation under Lopez. Accordingly, we must apply the four Morrison factors to determine whether the statute regulates an activity that "substantially affects" interstate commerce. To aid the clarity of our analysis, we take the four factors in a different order than the one presented in Morrison.

### a.    Congressional findings

When Congress originally passed the Protection of Children Against Sexual Exploitation Act of 1977, which criminalized the sale and distribution for sale of child pornography, it supported the legislation with findings that "child pornography . . . has become [a] highly organized, multimillion dollar industr[y] that operate[s] on a nationwide scale . . . [and that] the sale and distribution of such pornographic materials are carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce." S. Rep. 95-438, at 5 (1977), reprinted in 1978 U.S.C.C.A.N. 40, 42-43, available at 1977 WL 9660.[2]

---

[2]Although we are reviewing the statute as amended in 1998, we treat congressional findings and the legislative history of the Act passed in 1978 as relevant to the inquiry. See Maryland v. Wirtz, 392 U.S. 183, 190 n.13 (1968)(holding that when Congress previously passed related legislation accompanied by applicable findings, subsequent legislation was "presumably based on similar findings and purposes with respect to the areas newly covered.").

In 1984, Congress amended the Act to, _inter alia_, eliminate the requirement that the production, receipt, transportation, or distribution of child pornography be for a "pecuniary profit."  Congress did so because it found that this commercial purpose requirement created an enforcement gap: "Many of the individuals who distribute materials covered [by the statute] do so by gift or exchange without any commercial motive and thus remain outside the coverage of this provision."  _See_ Child Protection Act of 1984, Pub.L. No. 98-292, 98 Stat. 204; H.R. Rep. 98-536, at 10 (1983), _reprinted in_ 1984 U.S.C.C.A.N. 492, 501, _available at_ 1983 WL 25391.  Noting that "[g]enerally, the domestic material is of the 'homemade' variety, while the imported material is produced by commercial dealers," _id._ at 17, Congress determined that the statutory regime must be updated to ensure effective prosecution of producers and distributors.

Congress amended the Act again two years later when it passed the  Child Abuse Victims' Rights Act of 1986, supporting the new civil remedies for victims by finding that "child exploitation has become a multi-million dollar industry, infiltrated and operated by elements of organized crime, and by a nationwide network of individuals openly advertising their desire to exploit children."  Pub. L. No. 99-591, 100 Stat. 3341-74 (1986).

In 1996, Congress amended the Act to redefine child pornography as "any visual depiction, including any photograph,

-9-

film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where . . . such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C).  In passing those amendments, Congress found that "the existence of a traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography . . . ."  Child Pornography Protection Act of 1996, Pub. L. No. 104-208, § 1(4), 110 Stat. 3009-26,(1996), available at 1996 WL 506646.  The Senate Report also explained that "prohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping . . . to eliminate the market for the sexual exploitative use of children." Id. at § 1(12).

Finally, Congress amended the Act again in 1998, establishing jurisdiction for the production of child pornography if the "visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means," 18 U.S.C. § 2251(a), which is the provision now before us.  Congress offered two reasons for this amendment. First, it wanted the new jurisdictional element of the production

-10-

statute to mirror the existing jurisdictional element of the possession statutes.[3]  See H.R. Rep. 105-557, at 26-27 (1998), reprinted in 1998 U.S.C.C.A.N. 678, 695, available at 1998 WL 285821.  Second, Congress was concerned about federal law enforcement's current inability to prosecute "a number of cases where the defendant produced the child pornography but did not intend to transport the images in interstate commerce." Id. at 27.

Given this comprehensive backdrop, there is no question that Congress has made explicit findings about the extensive national market in child pornography and the need to diminish that national market by prohibiting the production of child pornography at the local level.

**b.    The commercial or economic nature of the regulated activity**

The congressional finding over 25 years ago that child pornography is a "multimillion dollar industry that operates on a nationwide scale" emphasizes that the underlying activity regulated by the child pornography statutes--the production, distribution, and possession of child pornography--is commercial activity, unlike the activity addressed by the federal legislation struck down in

_____

[3]See, e.g., 18 U.S.C. § 2252(a)(4)(B)(reaching "[a]ny person who . . . knowingly possesses . . . matter which contains any visual depiction [of child pornography] that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported).  We could find no legislative history revealing Congress's reason for amending § 2252(a)(4)(B) in 1990 to include this jurisdictional element.

-11-

Lopez and Morrison.  As the Lopez Court stated, the GFSZA "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms."  Lopez, 514 U.S. at 561.  The Morrison Court made a similar observation: "Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity."  Morrison, 529 U.S. at 613.  Possessing firearms in a school zone and committing gender-based violence do not involve goods or services that can be bought and sold.  There are no markets for these activities.  In contrast, there are large markets for child pornography.  "[W]hen a person produces for [his] own consumption a product that is traded in an interstate market, his conduct is economic in character."  United States v. Kallestad, 236 F.3d 225, 228 (5th Cir. 2000)(upholding the constitutionality of § 2252(a)(4)(B)).  In contrast, then, to Lopez and Morrison, the regulated activity here--producing child pornography--is an economic activity.  See also United States v. Buculei, 262 F.3d 322, 329 (4th Cir. 2001)("There can be no doubt that the production of visual depictions of minors engaging in sexually explicit conduct, i.e., child pornography, is economic in nature.").[4]

### c.  The express jurisdictional element

As previously discussed, the statute only reaches child pornography "if that visual depiction was produced using materials

---

[4]Whether Morales's individual activity was economic in nature is a different question, and we address it infra in Part I.A.3, where we discuss his as-applied challenge.

that have been mailed, shipped, or transported in interstate or foreign commerce by any means . . . ." § 2251(a). Importantly, the jurisdictional element discussed here, and the requirement of a substantial impact on interstate commerce, discussed in the next section, are distinct inquiries. At a minimum, the presence of a jurisdictional element "may establish that the enactment is in pursuance of Congress's regulation of interstate commerce." Morrison, 529 U.S. at 612. In addition to this express invocation of Commerce Clause power, the jurisdictional element may also serve to ensure that the defendant's conduct has at least some "explicit connection with or effect on interstate commerce" and limit the statute's reach to such cases. Id. at 611-12.

Morales complains that because Puerto Rico is an island heavily dependent on imports, the jurisdictional element of § 2251(a), which requires only that the materials of production have moved in interstate commerce, does not limit the statute's reach at all. He makes a fair point about this jurisdictional element that applies to any locale in the United States. As the Third Circuit observed in ruling on the same statute: "as a practical matter, the limiting jurisdictional factor is almost useless here, since all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce . . . ." United States v. Rodia, 194 F.3d 465, 473 (3d Cir. 1999).

-13-

There are instances, however, where the jurisdictional element of a statute will more effectively limit the number of cases that fall under the purview of the statute, as envisioned by the Supreme Court. For example, in passing a federal arson statute, Congress criminalized damaging or destroying, "by means of fire or an explosive, any . . . property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i)(Supp. IV 1994)(emphasis added). In Jones v. United States, 529 U.S. 848, 859 (2000), the Supreme Court reversed a conviction under this statute for the arson of a purely private residence. The Court found that by criminalizing the arson of property only if it was "'used in' commerce or commerce affecting activities," id. at 850-51, Congress did not intend to exercise its full power under the Commerce Clause, leaving residential arson cases "to the law enforcement authorities of the states." Id. at 859. As the Supreme Court noted: "The key word is 'used.' 'Congress did not define the crime described in § 844(i) as the explosion of a building whose damage or destruction might affect interstate commerce. . . .'" Id. at 854 (quoting United States v. Mennuti, 639 F.2d 107, 110 (2d Cir. 1981)). The Supreme Court read the jurisdictional element of § 844(i) as evidence of Congress's recognition of the "distinction between legislation limited to activities 'in commerce' and legislation invoking Congress's full power over activity substantially 'affecting . . .

-14-

commerce.'" Jones, 529 U.S. at 856 (quoting Russell v. United States, 471 U.S. 858, 859-60 (1985))(alteration in original). The jurisdictional element of the federal arson statute, then, required a somewhat heightened nexus between the defendant's conduct and an effect on interstate commerce. See United States v. Fenton, [__ F.3d __], 2004 WL 943624, at *7 (1st Cir. May 4, 2004)(explaining that "the Jones Court concluded that an owner-occupied private dwelling did not have a sufficient nexus to interstate commerce to satisfy the jurisdictional element because the owner was not actively using the property in a way that affected interstate commerce.") As Fenton and Jones itself make clear, Congress limited the reach of the arson statute to property that was used directly in interstate commerce or that was used in activities that affected interstate commerce.

In passing § 2251(a), however, Congress formulated a broader jurisdictional element that both invokes its Commerce Clause power and purports to exercise that power by reaching any child pornography that was produced using materials that moved in interstate commerce. Although this jurisdictional element ensures that any prosecuted conduct has a minimal nexus with interstate commerce, that minimal nexus may not meet the substantial effect requirement of Morrison. In Rodia, the Third Circuit found it "at least doubtful . . . that the jurisdictional element adequately performs the function of guaranteeing that the final product

-15-

regulated substantially affects interstate commerce."  Rodia, 194 F.3d at 473.  We agree with this observation.

If the jurisdictional element bore sole responsibility for establishing that the impact of the regulated activity on interstate commerce is substantial or direct, the language of § 2251(a) likely would not be up to the task.  The jurisdictional element focuses on things such as film, cameras, videotapes, and recorders moving in interstate commerce, which are then used to produce child pornography.  As a matter of logic, this Commerce Clause premise has the kind of flaw so worrisome to the Supreme Court in Lopez and Morrison--it could justify federalizing a vast array of crimes now prosecuted by the states, solely because the criminal used "materials that have been mailed, shipped, or transported in interstate of foreign commerce by any means."  See Lopez, 514 U.S. at 564 (explaining that if Congress could regulate criminal acts simply because they have external costs or affect national productivity, "it [would be] difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States have historically been sovereign.")  Moreover, the congressional findings about the link between the regulated activity (production of child pornography) and interstate commerce did not claim that the market for child pornography was increasing the demand for film and cameras.  The focus, instead, was on a different link--the relationship between

-16-

local production of child pornography and the national market for the child pornography itself. This is the link that is the focus of the separate inquiry in the following section about the substantial effect of the regulated activity on interstate commerce.

However, the disconnect between the interstate commerce activity described in the jurisdictional element of § 2251(a) and the interstate commerce activity (the national market for child pornography) that prompted Congress to criminalize the production of child pornography is not fatal to the constitutionality of the statute. Indeed, even a complete absence of a jurisdictional element in the text of a statute is not fatal to a statute challenged on Commerce Clause grounds. "[I]n Lopez, the Court simply did not state or imply that all criminal statutes must have such an element, . . . or that any statute without such an element is per se unconstitutional." United States v. Wilson, 73 F.3d 675, 685 (7th Cir. 1995). See also Rancho Viejo, LLC v. Norton, 323 F.3d 1062, 1068 (D.C. Cir. 2003)("[T]he absence of such a jurisdictional element simply means that courts must determine independently whether the statute regulates activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[] interstate commerce.") (quoting United States v. Moghadam, 175 F.3d 1269, 1276 (11th Cir. 1999)). On the other hand, any statute enacted pursuant to the

-17-

Congress's Commerce Clause power that does not regulate channels or instrumentalities of interstate commerce, or persons or things in interstate commerce, must regulate activity that has a substantial effect on interstate commerce. Otherwise, courts will strike it down as unconstitutional. We now turn to that substantial effect inquiry.

### d. The link between the regulated activity and a substantial effect on interstate commerce

The final Morrison factor asks whether "the link between [the regulated activity] and a substantial effect on interstate commerce was attenuated." Morrison, 529 U.S. at 612. Given the manifest nature of the national child pornography market, and Congress's related findings, there is no question that Congress can regulate the national child pornography market. The issue, then, is whether Congress may reach "local, intrastate conduct in order to effectively regulate a national, interstate market." Kallestad, 236 F.3d at 229.

The seminal case in this area remains Wickard v. Filburn, 317 U.S. 111 (1942). There, the Supreme Court upheld the Agricultural Adjustment Act, which levied penalties on crops that exceeded the act's quota. Filburn, a farmer who grew wheat exclusively for consumption on his own farm, challenged the constitutionality of the act, arguing that the breadth of the regulation exceeded Congress's Commerce Clause authority because it reached purely local production and consumption. In upholding the

-18-

statute, the Supreme Court ruled that Congress could regulate intrastate activity when such activity, taken in the aggregate, might ultimately have a substantial effect on interstate commerce. Wickard, 317 U.S. at 125 ("Even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce . . . .").

Defendant argues that Lopez and Morrison prohibit applying the aggregation principle to the child pornography laws. We have encountered this argument before in relation to 18 U.S.C. § 2252(a)(4)(B), which uses language analogous to § 2251(a) to criminalize possession of child pornography.[5] See United States v. Robinson, 137 F.3d 652 (1st Cir. 1998). Because of the similarities in the statutory language, we find the analysis of §

---

[5]Section 2252(a)(4)(B) provides that

> [a]ny person who . . . knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

18 U.S.C.A. § 2252(a)(4)(B).

2252(a)(4)(B) persuasive in assessing the constitutionality of §

2251(a).  See United States v. Holston, 343 F.3d 83, 89 n.2 (2d

Cir. 2003)(finding § 2252(a)(4)(B) precedent applicable when

considering a challenge to § 2251(a) because "the relevant

jurisdictional language is equivalent"); United States v. Galo, 239

F.3d 572, 575 (3d Cir. 2001)(same).

In Robinson, we upheld the constitutionality of §

2252(a)(4)(B) because the local possession of child pornography

"'through repetition elsewhere' helps to create and sustain a

market for sexually explicit materials depicting minors."

Robinson, 137 F.3d at 656 (quoting Lopez, 514 U.S. at 567).

Echoing the 1996 congressional findings that child pornography

"inflames the desires of child molesters, pedophiles, and child

pornographers who prey on children, thereby increasing the creation

and distribution of child pornography," Pub. L. No. 104-208,

Robinson held that "[b]y outlawing purely intrastate possession of

child pornography . . ., Congress can curb the nationwide demand

for these materials."  Id.[6]

---

[6]While Robinson predates Morrison, our decision essentially
anticipated all four of the Morrison factors, which, of course,
were drawn from Lopez.  See Robinson, 137 F.3d at 656 (discussing
the economic nature of child pornography, noting § 2252(a)(4)(B)'s
explicit jurisdictional element, citing relevant congressional
findings, and concluding that aggregated possession substantially
affects interstate commerce by "creat[ing] and sustain[ing] a
market for" child pornography).

As the Third Circuit observed, "[t]here is a subtle transformation at work" in applying the Wickard aggregation rationale to situations where the "home-grown" production and consumption of a commodity does not necessarily substitute for a commercially produced version that the defendant would otherwise have purchased in the marketplace. Rodia, 194 F.3d at 476. The Rodia court noted that Wickard has not been limited strictly to scenarios of commodity substitution, however, and Wickard's "generic principle--that intrastate activity, if repeated, may substantially affect interstate commerce," id., is still sound. In both Lopez and Morrison, the Supreme Court reaffirmed the vitality of Wickard while emphasizing that its aggregation principle should be applied only to statutes that regulate economic or commercial activities. Lopez, 514 U.S. at 561; Morrison, 529 U.S. at 610.

In addition to our own precedent applying Wickard's principles to a child pornography statute in Robinson, the Supreme Court long ago recognized that child pornography is a commodity influenced by and subject to economic market forces. See Osborne v. Ohio, 495 U.S. 103, 109-10 (1990)(finding that it is "surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand" while upholding an Ohio pornography statute against a First Amendment challenge). As the Seventh Circuit succinctly said: "A market has two sides,

-21-

supply and demand; without both, the market collapses." United States v. Richardson, 238 F.3d 837, 842 (7th Cir. 2001)(discussing §§ 2252(a)(2) and (a)(4)(B) in a sentencing context). See also Kallestad, 236 F.3d at 231 ("A true market is inevitably commercial, and is pushed by supply and demand, whether manifested in swaps or purchase and sale."). In Robinson, we addressed possession, the demand side of the child pornography market. Here, we address production, the supply side of that market. While possessing child pornography fuels the demand side of the market, producing child pornography fuels the supply side of the market. The same logic we used in Robinson applies here: by outlawing the purely local production of child pornography, Congress can curb the nationwide supply for these materials. See Robinson, 137 F.3d at 656. The prohibition on intrastate production "curb[s] the supply of child pornography at its source, before it [is] released into the interstate market." Rodia, 194 F.3d at 477 n.5.

Defendant's reading of Lopez and Morrison ignores our analysis in Robinson. Producing child pornography is an economic activity because it creates a product for which there is an extensive national market, and "in every case where we have sustained federal regulation under the aggregation principle in Wickard, the regulated activity was of an apparent commercial character." Morrison, 529 U.S. at 610 n.4.(citation omitted).

-22-

Here, Congress wishes to regulate the availability of child pornography in the national market. Because a significant portion of the child pornography about which Congress was concerned "is homegrown, untraceable, and enters the national market surreptitiously, [the Second Circuit] conclude[d] that Congress, in an attempt to halt interstate trafficking, can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce." Holston, 343 F.3d at 90. We agree. Often, as is the case here, it is necessary to control local behavior to ensure the effectiveness of interstate regulation. See NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37-38 (1937); see also Kallestad, 236 F.3d at 231 ("[W]e have little hesitation in concluding that where the product is fungible, such that it is difficult if not impossible to trace, Congress can prohibit local possession in an effort to regulate product supply and demand and thereby halt interstate trade."). We conclude, therefore, that §2251(a) reaches intrastate activity that substantially affects the interstate child pornography market. It is a facially valid exercise of Congress's Commerce Clause power.[7]

_____

[7]This holding is in line with that of seven other appellate circuits that, since Morrison, have upheld convictions against constitutional challenges on Commerce Clause grounds to either § 2251(a) or the analogous possession statute, § 2252(a)(4)(B). See United States v. Holston, 343 F.3d 83 (2d Cir. 2003)(§ 2251(a)); United States v. Galo, 239 F.3d 572 (3d Cir. 2001)(§§ 2251(a) and 2252(a)(4)(B)); United States v. Buculei, 262 F.3d 322 (4th Cir.

3.  The Constitutionality of § 2251(a) As Applied to Morales

We turn now to Morales's claim that § 2251(a) is unconstitutional as applied to him.  In support of that position, the defendant argues that his individual conduct falls outside the class of activity properly regulated by Congress because "although [he] may have engaged in sexually explicit conduct with a minor for the purpose of producing visual depictions for his own gratification, the evidence has shown that defendant did not purchase, trade, sell or barter the self-generated pornography, nor [did] he [have] any intention to do so."  This argument is unpersuasive.  When Congress regulates a class of activities that substantially affects interstate commerce, a defendant's claim that his personal activities did not affect interstate commerce fails if his activity is within that class.  When "'a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'"  Lopez, 514 U.S. at 558 (quoting Maryland v. Wirtz, 392 U.S. 184, 197 n.27).  Here, Congress authorized

2001)(2251(a)); United States v. Kallestad, 236 F.3d 225 (5th Cir. 2000)(§ 2252(a)(4)(B)); United States v. Angle, 234 F.3d 326 (7th Cir. 2000)(§ 2252(a)(4)(B)); United States v. Hampton, 260 F.3d 832 (8th Cir. 2001)(§§ 2251(a) and 2252(a)(4)(B)); United States v. Adams, 343 F.3d 1024 (9th Cir. 2003)(§ 2252(a)(4)(B)).  For a contrary view in the as-applied context, see United States v. Corp, 236 F.3d 325 (6th Cir. 2001)(upholding an as-applied challenge to § 2252(a)(4)(B)); and United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003)(same), both of which we discuss infra.

-24-

punishment for any person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct[]," including intrastate production of child pornography for personal use. 18 U.S.C. § 2251(a). Contrary to Morales's arguments, the government is not required to prove that the defendant's actions, standing alone, had an effect on interstate commerce, and the fact that Morales did not sell or distribute the pornographic tapes of himself and the minor is irrelevant.[8]

In reaching this conclusion, we do not reject all possible as-applied Commerce Clause challenges to § 2251(a) and the related child pornography statutes.[9] To amplify this point, we distinguish between different types of as-applied challenges. There is the kind of challenge we have in this case--a claim that conduct clearly within the language of the statute (inducing a minor to engage in sexually explicit conduct for the purpose of

_____

[8]The government still must prove, as it did here, that the materials used to produce the pornographic depiction were "mailed, shipped, or transported in interstate or foreign commerce by any means . . . " because it is an element of the charged offense. § 2251(a). Whatever the limited value of the jurisdictional element in assuring that the statute meets the constitutional requirement of the Commerce Clause, it is an element of the offense that the government must address in all prosecutions under the statute.

[9]Also, we do not intend to express any view regarding as-applied challenges to statutes relating to the regulation of adult pornography. The State has "greater leeway in the regulation of pornographic depictions of children." New York v. Ferber, 458 U.S. 747, 756.

producing a visual depiction) is nevertheless beyond the power of Congress to criminalize because the perpetrator does not intend to sell or distribute the visual depiction. This claim fails because Congress's power to criminalize this conduct pursuant to the Commerce Clause turns on the economic nature of the class of conduct defined in the statute rather than the economic facts (such as sale or distribution) of a single case. As we have already indicated, Lopez and Morrison proscribe this kind of as-applied challenge.

However, there are as-applied challenges that might focus on facts other than the economic facts of the particular case. These facts could include the age of the minor, the relationship between the defendant and the minor, the nature of the allegedly sexually explicit conduct, and the nature of the visual depiction of that conduct. In a given prosecution, some of these facts could raise constitutional privacy concerns[10] or concerns that the conduct at issue, although covered by the language of the statute, was not within the sphere of activity identified by Congress as the basis for its exercise of power under the Commerce Clause. In Lopez and Morrison, the Supreme Court consulted legislative history for

---

[10]For example, the Supreme Court has held that states cannot regulate the private possession of adult obscenity, Stanley v. Georgia, 394 U.S. 557 (1969), the private sexual activity of married couples, Griswold v. Connecticut, 381 U.S. 479 (1965), or the private sexual activity of other adults, Lawrence v. Texas, 539 U.S. 558 (2003).

Congress's judgment about the conduct it wished to regulate and the relationship between that conduct and interstate commerce. See Lopez, 514 U.S. at 557; Morrison, 529 U.S. at 614. Here, the legislative history of the child pornography statutes reveals that Congress exercised its Commerce Clause power because of its concern about the extensive child exploitation industry: "child exploitation has become a multi-million dollar industry, infiltrated and operated by elements of organized crime, and by a nationwide network of individuals openly advertising their desire to exploit children." Pub. L. No. 99-591, 100 Stat. 3341-74 (1986). See also Pub. L. No. 104-208, § 1(4), 110 Stat. 3009-26,(1996), available at 1996 WL 506646. Accordingly, the absence of such exploitation in a given case might be relevant to the as-applied inquiry.

Two of our sister courts have upheld as-applied challenges to the analogous possession statute, § 2252(a)(4)(B), and Morales relies heavily on their reasoning. See United States v. Corp, 236 F.3d 325 (6th Cir. 2001); United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003). In Corp, the defendant plead guilty to a single count of possession based on a picture of a seventeen-year-old girl, taken shortly before her eighteenth birthday, engaging in consensual sexual activity with Corp's twenty-six-year-old wife. Noting that "Corp was not involved, nor intended to be involved, in the distribution or sharing with others of the

-27-

pictures in question," and that the minor was "not an 'exploited child' nor a victim in any real and practical sense in this case," the Sixth Circuit stated that "we do not determine the aggregate effect on interstate commerce of the purely intrastate dealing in child pornography.  Instead, we conclude that Corp's activity was not of a type demonstrated  substantially to be connected or related to interstate commerce on the facts of this case." Corp, 236 F.3d at 332.

The Ninth Circuit, relying on Corp, reached a similar conclusion in McCoy.  There, a mother was prosecuted under the possession statute for a single picture of her and her daughter with their genital areas exposed.  Faced with a defendant who was intoxicated when her husband took the picture, and who clearly was not a pedophile or sexual predator, the Ninth Circuit stated that "no one claims that [the mother] is or is likely to become a child pornographer."  McCoy, 323 F.3d at 1132.  Furthermore, "McCoy's 'home-grown' photograph never entered in and was never intended for interstate or foreign commerce."  Id. (emphasis in original). Stating that "McCoy's possession was non-economic and non-commercial," the McCoy court concluded that "nothing in the circumstances of McCoy's case establishes any substantial connection between her conduct and any interstate commercial activity." Id. (emphasis in original).

We must acknowledge some reservations about certain aspects of the analysis in the Corp and McCoy decisions. Both courts noted that the sexually explicit visual depictions in those cases were not intended for distribution. Corp, 236 F.3d at 332; McCoy, 323 F.3d at 1132. Based in part on this observation, the courts concluded--explicitly in McCoy, and impliedly in Corp--that the conduct at issue was non-economic and non-commercial in nature. Having thus labeled the conduct at issue as non-economic and non-commercial, the courts could then avoid applying the Wickard aggregation principle to the as-applied challenge.

As we have already noted in our discussion of the facial challenge to § 2251(a), "in every case where [the Supreme Court has] sustained federal regulation under the aggregation principle in Wickard, the regulated activity was of an apparent commercial character." Morrison, 529 U.S. at 610 n.4.(citation omitted). However, that "apparent commercial character" does not depend on any intent by an individual defendant involved in the illegal conduct to introduce the proscribed visual depictions into commerce. In Lopez and Morrison, the Supreme Court discussed the type of activity broadly--as defined in the statute--when determining whether the regulated conduct was commercial or economic, and when discussing the attenuation of the link between the regulated activity and a substantial effect on interstate commerce. For example, Lopez focused on the fact that the GFSZA

-29-

"is a criminal statute that <u>by its terms</u> has nothing to do with 'commerce' or any sort of economic enterprise, however broadly those terms are defined." <u>Lopez</u>, 514 U.S. at 549 (emphasis added). Also, the <u>Lopez</u> Court discussed "firearm possession in a local school zone," not a 12th-grade student bringing a concealed handgun to school. <u>Id.</u> at 563. Likewise, in <u>Morrison</u>, the Court spoke of "gender-motived violence" generally, not the defendants' alleged rape of their college classmate. <u>Morrison</u>, 529 U.S. at 615. <u>Lopez</u> and <u>Morrison</u> demand that the general subject of the statute, not the defendant's individual activity, be economic in nature to justify aggregation under <u>Wickard</u>.

We think that Judge Trott's dissent in <u>McCoy</u> is persuasive on this important point.

> My compassionate friends are not incorrect in describing the underlying microcosmic facts of <u>this</u> case as (1) wholly personal, (2) not commercial, (3) strictly intrastate, and (4) the product of an isolated alcohol-fueled episode--all suggesting that Rhonda McCoy and her family need help, not federal prison. However, I conclude, based on Supreme Court precedent, that the majority's legal approach is not correctly grounded. The real determinative question is whether the activity generically described in the <u>statute</u> has a substantial effect on interstate commerce such that it is subject to criminalization by Congress.

McCoy, 323 F.3d at 1134 (Trott, J. dissenting)(emphasis in original).[11]  The Second Circuit engaged in similar reasoning to reach the same conclusion in upholding § 2251(a) against an as-applied Commerce Clause challenge in United States v. Holston, 343 F.3d 83 (2d Cir. 2003).  Quoting its own precedent involving a Commerce Clause challenge to a federal statute that prohibited growing marijuana even when the defendant did not intend to distribute the drug, the Holston court held that

> when Congress regulates a class of activities that substantially affect interstate commerce, "[t]he fact that certain intrastate activities within this class, such as growing marijuana solely for personal consumption, may not actually have significant effect on interstate commerce is . . . irrelevant."  Moreover, "[t]he nexus to interstate commerce . . . is determined by the class of activities regulated by the statute as a whole, not by the simple act for which an individual defendant is convicted."

Holston, 343 F.3d at 90 (quoting Proyect v. United States, 101 F.3d 11 (2d Cir. 1996)(per curiam)(alterations in original)).  In both Corp and McCoy, a minor was induced to engage in sexually explicit conduct for the purpose of producing a visual depiction that could find its way into the national market for pornography.  It does not matter that the defendant had no intention of placing that visual depiction in the national market.

---

[11]To the extent that Judge Trott in his dissent in McCoy took the position that there can be no as-applied challenges in Commerce Clause cases when the conduct falls within the language of the statute, we disagree for the reasons already stated.  See infra.

-31-

However, to the extent that the Sixth and Ninth Circuits considered the defendants' non-predatory, non-exploitative conduct in deciding that their conduct fell outside the purview of the statute and the Congressional concerns that prompted its passage pursuant to the Commerce Clause, we agree with the relevance of this consideration. The Corp court emphasized that the minor was almost eighteen years old and willingly participated in the sexual conduct. Similarly, the McCoy court emphasized that the single pornographic picture represented questionable judgment by an intoxicated parent, not the predatory act of a pedophile. Unlike the inappropriate reliance in Corp and McCoy on the absence of an intent to distribute the depictions in commerce, their reliance on the age of the minor, the relationship between the defendants and the minor, and the absence of predatory exploitation all seem important and appropriate questions to ask in considering whether the conduct at issue in an as-applied challenge falls within the class of activity which bears the substantial relationship to interstate activity that justifies action by Congress under the Commerce Clause.

On the facts of the case before us, we are comfortable that "the acts charged against [Morales] were well within the limits of legitimate congressional concern," Sabri v. United States, 2004 WL 1085233, (May 17, 2004). Specifically, Morales sexually exploited a thirteen-year-old girl, coercing her into

performing sex acts with him on multiple occasions, for the purpose of videotaping their encounters. As this conduct seems well within the bounds of what Congress intended--and had the authority--to proscribe under its Commerce Clause power, we reject Morales's as-applied challenge.[12]

### B. Sufficiency of the Evidence

In addition to his constitutional challenges, Morales also raises a sufficiency of the evidence claim. Appellate courts review claims regarding the sufficiency of the evidence de novo. United States v. Hernández, 146 F.3d 30, 32 (1st Cir. 1998). The evidence presented at trial must be evaluated in the light most favorable to the government, and all reasonable inferences will be drawn in its favor. United States v. Baltas, 236 F.3d 27, 35 (1st Cir. 2001). When a plausible read of the record supports the verdict, we will not overturn the jury's determination on appeal. United States v. Ortíz, 996 F.2d 707, 711 (1st Cir. 1992).

---

[12]Our colleague limits her concurrence to the sufficiency of the evidence analysis and the affirmance of the conviction, suggesting that our decision in United States v. Robinson, 137 F.3d 652 (1st Cir. 1998) obviates the need for any further analysis. Respectfully, we disagree for two reasons. First, we read Robinson as only a facial analysis of a Commerce Clause challenge to the analogous possession statute, not an as-applied ruling on the statute at issue here. Second, United States v. Morrison, 529 U.S. 598 (2000), post-dates Robinson by two years. Defendant specifically argued that Morrison, in combination with United States v. Lopez, 514 U.S. 549 (1995), precluded the applicability of the Wickard aggregation principle endorsed by Robinson. That is not an insubstantial argument. It had to be addressed.

Morales argues that the government failed to prove one of the elements of an 18 U.S.C. § 2251(a) violation--namely, that the defendant induced the minor to engage in sexually explicit conduct <u>for the purpose</u> of producing a visual depiction of such conduct. The defendant argues that the video was the result of, not the motive behind, his sex acts with the minor. At trial, Morales testified that he and the girl had "romantic feelings" for each other and that the video "came about by chance." Noting that he had created videos of himself and his wife having sex, and that they used the tape solely for their own use, he says that this history bolsters his claim that he did not engage in sex with the minor for the purpose of recording the encounters.

As succinctly explained by the district court, "the testimony of the minor, the testimony of the defendant, and the videotape itself constitute an evidentiary basis sufficient to allow a jury to find that the defendant induced the minor to have sexual relations with him for the purpose of recording that conduct." The evidence shows that the defendant actively concealed from the minor the fact that he was videotaping her. He told her that the video camera was connected to the television so that she "could see herself" while the two had sexual relations. Additionally, while taping his sex acts with the minor, the defendant gave her specific instructions regarding certain positions he wanted her to assume relative to the camera,

-34-

instructed her on what to say while the camera recorded their activities, and used a remote control to zoom the camera in and out while they were having sex.

Furthermore, the defendant's claim that the videotaping was not planned is implausible. After the defendant had taken the minor to a motel room to have sex for the fourth time, he returned to his car and retrieved the recording equipment that he kept there. The defendant kept sexual aids in the same bag with the camera, a fact which standing alone could lead the jury to infer that the defendant had planned to videotape the encounters. Similarly, the defendant's taping of his sexual activity with his wife could lead a reasonable jury to believe that he also engaged in sex acts with the minor for the purpose of videotaping them. Finally, a reasonable jury also could infer that since Morales taped sexual encounters with the minor more than once, he induced the girl to engage in sex acts for the purpose of creating videotapes of their encounters. On this background, we readily find that the government's evidence was sufficient to support the jury's guilty verdict.

**AFFIRMED.**

**- Concurring Opinions Follow -**

**LYNCH**, <u>**Circuit Judge**</u>, **Concurring.** I join the judgment affirming the conviction and that portion of Judge Lipez's opinion in Section II.B. which rejects Morales's sufficiency of the evidence challenge. I do not join the remainder of the opinion.

The defendant's as-applied Commerce Clause challenge to his conviction is foreclosed by this court's previous opinion in <u>United States</u> v. <u>Robinson</u>, 137 F.3d 652 (1st Cir. 1998), which I read as resolving that case on the basis of the "as applied" challenge. There is no need to address a facial challenge. Even in the aftermath of <u>United States</u> v. <u>Morrison</u>, 529 U.S. 598 (2000), defendant has offered no principled basis for distinguishing <u>Robinson</u>'s acceptance, in this context, of the theory of a nexus to interstate commerce contained in <u>Wickard</u> v. <u>Filburn</u>, 317 U.S. 111 (1942). <u>See</u> <u>Robinson</u>, 137 F.3d at 656. That being so, the panel is bound by <u>Robinson</u>.

**OBERDORFER, <u>Senior District Judge</u>, Concurring.** I join the majority opinion. I am satisfied that it does not foreclose 'as applied' challenges in limited, yet-to-be-defined circumstances. An overbroad definition of conduct constitutionally proscribed by the statute here at issue could impermissibly tilt the balance between the federal interest in suppressing commerce in pornography and violation of the constitutional protections afforded to the intimate relations of individuals and to the traditional law enforcement prerogatives of the states. Because we recognize that, in circumstances not present here, application of 18 U.S.C. § 2251(a) could be inconsistent with such limitations on federal Commerce Clause power, I am satisfied that Section II.A.3 of our opinion adequately honors those limitations.